[No. B190963. Second Dist., Div. Four. June 22, 2007.]

BRENDA BERKLEY, Individually and as Personal Representative, etc., et al., Cross-complainants and Appellants, v. GORDON DOWDS, Cross-defendant and Respondent.

520

## COUNSEL

Balisok & Associates, Russell S. Balisok and Steven C. Wilheim for Cross-complainants and Appellants.

LaFollette, Johnson, DeHaas, Fesler & Ames, Christopher P. Wend and David J. Ozeran for Cross-defendant and Respondent.

## OPINION

**MANELLA, J.—**

### INTRODUCTION

Appellant Brenda Berkley, on behalf of herself, as personal representative of the estate of her deceased husband, John Vel Herron, and as guardian ad litem of her daughter Katie Rose Herron, appeals from the judgment of dismissal of her cross-action against respondent Gordon Dowds, the physician who attended appellant's deceased husband before the latter died after suffering brain damage in an automobile accident. Respondent was dismissed from the cross-action after his demurrers were sustained without leave to amend. Appellant challenges the orders sustaining the demurrers to the first

and third causes of action of the first amended cross-complaint (FACC)—negligence/willful misconduct and elder abuse—and the demurrers to the second and third causes of action of the second amended cross-complaint (SACC)—intentional infliction of emotional distress upon the deceased and appellant, respectively.

After an independent review of the allegations of the cross-complaints, we find no error in sustaining the demurrers. The first and third causes of action of the FACC failed to allege facts describing the injury suffered or the acts or omissions negligently performed, or showing how the acts or omissions were the proximate cause of the injury. Further, no facts were alleged showing that respondent knew that the acts or omissions would probably cause the injury, as required to show willful misconduct. The demurrer to the second cause of action of the SACC was properly sustained, because it failed to allege a compensable injury, without which there can be no cause of action for punitive damages alone. The third cause of action of the SACC failed to allege facts constituting outrageous conduct on the part of respondent. As appellant has not shown how the pleadings can be amended to state a cause of action, the trial court did not abuse its discretion in denying leave to amend.

## BACKGROUND

Plaintiff 22125 Roscoe Corporation, which is not a party to this appeal, sued appellant as the personal representative of the estate of John Vel Herron, for amounts allegedly owed for medical services provided to Herron prior to his death in 2003. Appellant filed a cross-complaint on behalf of herself, the estate and her daughter, against 22125 Roscoe Corporation and respondent, Gordon Dowds, M.D., also naming Northridge Medical Group, Inc. (Medical Group), and Catholic Healthcare West, Inc., which are not parties to this appeal.[1] All cross-defendants, except respondent Dowds, filed demurrers to the original cross-complaint. Respondent's counsel entered an appearance at the hearing on the demurrers, but the record does not reflect that respondent joined them or filed a separate demurrer. Respondent's first pleading was his demurrer to the FACC.

An essentially identical core set of facts was alleged in both the FACC and SACC. As the facts were incorporated by reference into each successive cause of action in each cross-complaint, we summarize them without regard to which facts appear in which count, and we summarize only the material

---

[1] We refer to all three appellants in the singular for convenience.

factual allegations.[2] The cross-complaints alleged that on or about July 11, 2003, Herron, appellant's husband, was injured in an automobile accident that left him with catastrophic brain damage, and that on an unspecified date thereafter, he died.[3] It was alleged that during Herron's final hospitalization, he was a dependent adult with physical or mental limitations restricting his ability to carry out normal activities or to protect his rights; and that respondent Dowds was a physician employed by or otherwise associated with Medical Group, whose contract with a health maintenance organization (HMO) obligated respondent and Medical Group to provide medical care to Herron prior to Herron's death.

The cross-complaints alleged that respondent and Medical Group were obligated by Medical Group's contract with the HMO and Blue Shield to provide Herron with referrals to health care providers, and to obtain necessary testing and rehabilitative services in order to prevent deterioration and promote improvement following his injuries. It was further alleged that the HMO received the same monthly fee regardless of the extent of care provided. In order to increase its profit, the cross-complaints alleged, Medical Group breached its duty to provide Herron with all medically necessary testing, intensive care and rehabilitative services, by prematurely removing him from intensive care and transferring him to a nursing facility, where rehabilitation services were limited and soon afterward, eliminated.

The cross-complaints alleged that the following occurred a few days after Herron's injury, while he was in a vegetative state in the nursing facility, but allegedly aware of nearby conversation: HMO, Medical Group and respondent repeatedly urged appellant in Herron's presence to authorize his caregivers to "pull the plug," arguing that he would never recover, be able to function, return home or live a normal life; and that after the first such argument, appellant admonished his care providers against discussing Herron's medical needs, condition or prognosis in his presence, but cross-defendants continued to do so with the intent to injure Herron or with a conscious disregard for the risk of injuring him.

The cross-complaints further alleged that in the days following Herron's accident, in order to reduce their costs, HMO, Medical Group and respondent

---

[2] "[A] count in a complaint premised on detailed factual allegations in another count must stand or fall with the other count. [Citations.]" (*Lambert v. Southern Counties Gas Co.* (1959) 52 Cal.2d 347, 353 [340 P.2d 608].) We summarize only the ultimate facts, omitting legal conclusions, evidentiary facts and argument, except where necessary to understand the ultimate facts. (See *Nguyen v. Scott* (1988) 206 Cal.App.3d 725, 733 [253 Cal.Rptr. 800]; see generally 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 339, 345, 353; Code Civ. Proc., § 452.)

[3] The alleged date of the accident appears to be an error. The events allegedly took place over several days, yet appellant's statement as decedent's successor in interest, filed pursuant to Code of Civil Procedure section 377.32, and the attached death certificate showed the date of death as July 11, 2003.

agreed upon a plan designed to obtain appellant's consent to withdraw medical treatment and support from Herron. Pursuant to the plan, cross-defendants sought appellant's consent, sometimes without emotion, sometimes angrily or aggressively and sometimes in a threatening manner. It was alleged that the arguments ended when Herron died, at which time the nursing facility staff falsely told appellant by telephone that his condition was satisfactory. When she arrived at the facility, the staff told her that he was near death, but refused to call 911. After appellant called 911 herself, the responding emergency medical technicians told her they had been summoned previously by staff and had pronounced her husband dead two hours before her arrival. It was alleged that staff then summoned the police, accusing appellant of interfering with the operation of the facility. However, upon finding her lying across Herron's body in tears, the police declined to take action. As a result of cross-defendants' conduct, appellant allegedly suffered severe emotional distress.

Appellant's FACC set forth six causes of action, naming respondent in all but the second cause of action for fraud. As against respondent, the FACC purported to allege negligence in count 1, elder abuse in count 3, intentional infliction of emotional distress upon Herron in count 4, intentional infliction of emotional distress upon appellant in count 5, and wrongful death in count 6. Respondent interposed general demurrers to each count in which he was named, and the trial court sustained the demurrers, permitting appellant to amend only the two causes of action for intentional infliction of emotional distress.[4]

The SACC set forth four causes of action, naming respondent only in the second and third, for intentional infliction of emotional distress upon Herron and upon appellant, respectively.[5] Respondent interposed general and special demurrers and concurrently filed a motion to strike portions of the SACC, including allegations of malice, fraud and oppression, and the prayers for punitive damages. The trial court sustained the demurrers without leave to amend, citing the reasons stated in open court and in the moving papers. The court found respondent's motion to strike was moot, and placed it off

---

[4] Although the order sustained the demurrer to the intentional infliction of emotional distress cause of action in the singular, we assume the court meant to allow both to be amended, as there was no mention of a second cause of action for intentional infliction of emotional distress.

[5] The SACC's first cause of action for elder abuse does not name respondent, but it is incorporated by reference into the second and third, which do name him. This incorporation appears to have been in error, as the trial court had sustained respondent's demurrer to the elder abuse cause of action of the FACC without leave to amend, and appellant's arguments on appeal regarding elder abuse are directed only to the FACC. Appellant also incorporated all prior allegations into the final count of the SACC, which named only 22125 Roscoe, alleging wrongful death. We do not discuss the wrongful death cause of action, as appellant does not challenge its dismissal.

calendar. The court dismissed respondent from the cross-action January 30, 2006, and notice of entry of the order was served upon appellant March 3, 2006. She timely filed a notice of appeal May 2, 2006.

## DISCUSSION

### 1. *Standard and Scope of Review*

On appeal from a judgment of dismissal entered after a general demurrer is sustained, our review is de novo. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515 [101 Cal.Rptr.2d 470, 12 P.3d 720].) We examine the allegations of the complaint to determine whether it states a cause of action, and if not, we determine whether there is a reasonable possibility that it could be amended to do so. (*MacLeod v. Tribune Publishing Co.* (1959) 52 Cal.2d 536, 542 [343 P.2d 36].) "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . .' . . . [W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

"If substantial facts which constitute a cause of action are averred in the complaint or can be inferred by reasonable intendment from the matters which are pleaded, although the allegations of these facts are intermingled with conclusions of law, the complaint is not subject to demurrer for insufficiency." (*Krug v. Meeham* (1952) 109 Cal.App.2d 274, 277 [240 P.2d 732].) Further, "we are not limited to [appellant's] theory of recovery in testing the sufficiency of their complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory. The courts of this state have, of course, long since departed from holding a plaintiff strictly to the 'form of action' he has pleaded and instead have adopted the more flexible approach of examining the facts alleged to determine if a demurrer should be sustained. [Citations.]" (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817].)

Appellant contends that the trial court erred in sustaining respondent's demurrers to the first and third causes of action of the FACC (negligence/willful misconduct, and elder abuse), and to the second and third causes of action of the SACC (two counts of intentional infliction of emotional distress). Respondent contends that appellant is improperly attempting to challenge orders sustaining other defendants' demurrers to the

original cross-complaint, and that appellant abandoned her "willful misconduct" cause of action by filing the first amended complaint, which omitted it as a separate count. We agree there exists no order regarding the original cross-complaint subject to review in this appeal, as respondent did not demur to the original, and no demurrer was sustained as to respondent. However, we construe appellant's argument to be addressed to her first cause of action, pled in the FACC as "Negligence."[6]

## 2. *First Cause of Action of the FACC—Negligence/Willful Misconduct*

■ The parties have argued extensively about whether a tort called "willful misconduct" is recognized in California. It is not a separate tort, but simply " ' "an aggravated form of negligence, differing in quality rather than degree from ordinary lack of care" [citations].' " (*Simmons v. Southern Pac. Transportation Co.* (1976) 62 Cal.App.3d 341, 360 [133 Cal.Rptr. 42].) Its pleading requirements are similar to negligence but stricter. (See *Snider v. Whitson* (1960) 184 Cal.App.2d 211, 214–215 [7 Cal.Rptr. 353].)

■ "[T]he well-known elements of any negligence cause of action [are] duty, breach of duty, proximate cause and damages. [Citations.]" (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 614 [76 Cal.Rptr.2d 479, 957 P.2d 1313].) Appellant claims she alleged an ordinary duty of care, and more particularly, a duty to make referrals to other health care providers, and to obtain necessary testing and rehabilitative therapies in order to prevent Herron's deterioration and promote his improvement. Appellant contends this duty arose from the contract between Medical Group and Catholic Healthcare West to provide physician services, which they did by compensating respondent. At the same time, appellant claims she did not allege the duty of care ordinarily owed to a patient by his physician.[7] In fact, appellant's counsel admitted at the hearing on the demurrer to the FACC that respondent's care was within the standard of care applicable to physicians.

As described by appellant, respondent's duty was to use reasonable care in performing his employer's contractual obligations. Appellant provides no

---

[6] According to appellant, "a review of the First Cause of Action, denominated as one for 'negligence' in the First Amended [Cross-]Complaint, shows that in substance, the elements of willful misconduct were inserted in the First Cause of Action of the amended [cross-]complaint."

[7] Appellant denies this claim is an attempt to avoid the statute of limitations applicable to causes of action for professional negligence. (See Code Civ. Proc., § 340.5.) We do not reach respondent's contention that the statute of limitations provides an additional reason to affirm the judgment, as it was not asserted as a ground for the demurrer to the first cause of action. (See *O'Neil v. Spillane* (1975) 45 Cal.App.3d 147, 156 [119 Cal.Rptr. 245].) Appellant does not challenge the court's dismissal of the wrongful death cause of action on the ground it was barred by the statute of limitations.

authority to support a general duty, other than the duty of care ordinarily owed to a patient by his physician, to use reasonable care in performing an employer's contractual obligations. Nor does she identify how such duty could be owed to a third party who contracted with the employer. Further, she has made no effort to discuss any of the factors ordinarily reviewed to determine the existence of a duty.[8] The reviewing court is not required to examine undeveloped claims or make appellant's arguments for her. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 [87 Cal.Rptr.2d 754].) It is appellant's burden to show the demurrer was sustained erroneously. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].) As she has failed to do so with a proper duty analysis, she has not met her burden.

 Moreover, regardless of whether the facts are sufficient to plead duty, we are unable to find any factual allegations amounting to the remaining elements of negligence. Ordinarily, negligence may be alleged in general terms, without specific facts showing how the injury occurred, but there are "limits to the generality with which a plaintiff is permitted to state his cause of action, and . . . the plaintiff must indicate the acts or omissions which are said to have been negligently performed. He may not recover upon the bare statement that the defendant's negligence has caused him injury." (*Guilliams v. Hollywood Hospital* (1941) 18 Cal.2d 97, 101 [114 P.2d 1]; see *Potter v. Richards* (1955) 132 Cal.App.2d 380, 384–385 [282 P.2d 113].) The FACC failed to describe Herron's injury in any manner, other than to allege that he was deprived of the "possibility of receiving proper rehabilitation therapies," and concluding that he suffered a personal injury. The first cause of action was incorporated by reference into the sixth cause of action, for wrongful death, in which it was alleged that as a result of the "foregoing conduct," Herron died. However, there is no description of any particular negligent acts or omissions which were allegedly the proximate cause of the unnamed injury or death. Indeed, appellant's counsel acknowledged at the hearing on

---

[8] Factors which are usually considered in determining the existence of a duty of care include the " 'foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 203 [185 Cal.Rptr. 252, 649 P.2d 894], quoting *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561].)

the demurrers that there was no denial of lifesaving care and that "[w]e know [Herron] was receiving adequate support from the doctor."[9]

■ "A plaintiff 'must allege a causal connection between the negligence . . . and the injury he suffered. Ordinarily that is accomplished by implication from the juxtaposition of the allegations of wrongful conduct and harm. [Citation.] However, where the pleaded facts of negligence and injury do not naturally give rise to an inference of causation the plaintiff must plead specific facts affording an inference the one caused the others.' [Citation.]" (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 900–901 [2 Cal.Rptr.2d 79, 820 P.2d 181].) If the negligent act or omission was intended to be participation of some kind by respondent in the failure of Medical Group to refer Herron to a facility with "proper" rehabilitation services, such a fact does not naturally imply a causal relationship between that act or omission and an unnamed personal injury or death. Appellant was required to "allege facts, albeit as succinctly as possible, explaining how the conduct caused or contributed to the injury. [Citations.]" (*Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 78–79 [86 Cal.Rptr.2d 846, 980 P.2d 398].) We have found no such facts alleged in the FACC.

■ The act or omission must be even more specifically described in order to raise it to the level of willful misconduct. (*Snider v. Whitson, supra,* 184 Cal.App.2d at p. 214.) No claim of willful misconduct can be stated without alleging the specific act or omission that caused the injury. (*Id.* at p. 215.) In addition, " '[t]hree essential elements must be present to raise a negligent act to the level of wilful misconduct: (1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril. [Citations.]' " (*Simmons v. Southern Pac. Transportation Co., supra,* 62 Cal.App.3d at p. 360.)

In support of her claim that knowledge of the apprehended peril was adequately alleged, appellant quotes paragraph 18 of the FACC, which alleged in the passive voice various things that were done to Herron by an unnamed person or entity. The only act or omission arguably alleged to have been committed by respondent appeared in the following sentence of that paragraph: "Defendants denied medically appropriate and necessary testing, intensive care, and rehabilitative services to [Herron] until no other option for less expensive treatment was available." No causal connection was alleged between the denial of less expensive treatment or rehabilitation therapy and

---

[9] When the court asked appellant's counsel what his "theory" of liability was for Dowds on the wrongful death claim, counsel responded: "We believe that Dr. Dowds' conduct was within the standard of care as to the provision of medical services, and so I think the court's question is well taken."

the unnamed personal injury or death. Further, no facts were alleged to show that respondent knew that lack of such treatment or rehabilitation therapy would probably cause the unnamed injury or death. We conclude the first cause of action of the FACC failed to state a cause of action either in negligence or willful misconduct. As appellant does not contend it is susceptible to amendment, we further conclude the trial court did not abuse its discretion in denying leave to amend. (See *Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.)

### 3. *Third Cause of Action of the FACC—Abuse of a Dependent Adult (Elder Abuse)*[10]

Appellant seeks review of the third cause of action of the FACC, contending the trial court erred in sustaining respondent's demurrer to her cause of action under the Act. (See Welf. & Inst. Code, § 15600 et seq.)[11] The Act does not create a cause of action as such, but provides for attorney fees, costs, and punitive damages under certain conditions. (*ARA Living Centers - Pacific, Inc. v. Superior Court* (1993) 18 Cal.App.4th 1556, 1563–1564 [23 Cal.Rptr.2d 224]; see Welf. & Inst. Code, § 15657.) Abuse of a dependent adult or elder will justify heightened remedies when the cause of action includes facts showing the following: "(a) Physical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering[; or] [¶] (b) The deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering." (Welf. & Inst. Code, § 15610.07.) Acts of simple or even gross negligence will not justify the additional civil damage remedies. (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 783–785 [11 Cal.Rptr.3d 222, 86 P.3d 290].) Where the elder or dependent adult has died, the neglect or abuse resulting in pain or mental suffering must amount to recklessness, oppression, fraud or malice, in order to justify the heightened remedies. (*Mack v. Soung, supra,* 80 Cal.App.4th at p. 972.)

Appellant contends her elder abuse claim may be upheld based upon facts incorporated by reference from the allegations of the negligence/willful misconduct cause of action. We disagree, as we have already determined those allegations failed to show any harmful conduct by respondent or any injury as a result of any acts of respondent.

---

[10] Conduct proscribed by the Elder Abuse and Dependent Adult Civil Protection Act (Act) is commonly referred to as "elder abuse," although the Act is designed to protect both elderly and nonelderly dependent adults. (See Welf. & Inst. Code, § 15600; *Mack v. Soung* (2000) 80 Cal.App.4th 966, 971 [95 Cal.Rptr.2d 830].)

[11] Appellant alleged no new facts to support her third cause of action, but repeated allegations in prior counts and asserted that "[b]y virtue of these facts, Defendants . . . have committed Elder Abuse within the meaning of Welf. & Inst. Code[,] § 15657."

As appellant does not suggest any other facts support her elder abuse claim, she has failed to meet her burden to show the trial court erred in sustaining the demurrer. (See *Goodman v. Kennedy*, *supra*, 18 Cal.3d at p. 349.) Further, as she has not suggested how she might amend the elder abuse claim, she has not shown the denial of leave to amend to have been an abuse of discretion. (See *Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.)

### 4. *Second Cause of Action of the SACC—Intentional Infliction of Emotional Distress (Herron)*

■ The second cause of action of the SACC alleges, among other things, that Herron "was subjected to severe emotional distress, in the form of anxiety and fear." No other injury was alleged. "In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and do not include damages for pain, suffering, or disfigurement." (Code Civ. Proc., § 377.34.) Thus, the second cause of action does not allege a wrong for which Herron suffered a compensable injury. A wrong without damages is not actionable (*Hilliard v. A. H. Robins Co.* (1983) 148 Cal.App.3d 374, 391 [196 Cal.Rptr. 117]), unless damages are presumed by law. (*Clark v. McClurg* (1932) 215 Cal. 279, 284–285 [9 P.2d 505] (*Clark*) [defamation damages presumed].)

■ Appellant contends the possibility of recovering punitive damages will, by itself, support the second cause of action. We disagree. There must be a recovery of actual damages to support an award of punitive damages. (*Mother Cobb's Chicken T., Inc. v. Fox* (1937) 10 Cal.2d 203, 205–206 [73 P.2d 1185].) Appellant acknowledges this requirement, but contends that actual damages are different from recoverable damages, and that Herron's actual damages—emotional distress—will support a punitive damage award, even if there can be no award of compensatory damages. Again we disagree. In *Mother Cobb's Chicken*, the California Supreme Court relied upon an appellate court decision which held that a verdict for compensatory damages in the amount of "$00" precludes an award of punitive damages. (*Id.* at p. 206, citing *Haydel v. Morton* (1935) 8 Cal.App.2d 730, 736 [48 P.2d 709].) A verdict of " 'nothing' or 'none' " also precludes a punitive damage award. (*Haydel v. Morton*, *supra*, 8 Cal.App.2d at p. 736.) "[T]he rule of *Mother Cobb's Chicken* . . . is still sound." (*Cheung v. Daley* (1995) 35 Cal.App.4th 1673, 1677 [42 Cal.Rptr.2d 164].) "[A]n award of exemplary damages must be accompanied by an award of compensatory damages . . ." "[o]r its equivalent, such as restitution [citation], an offset [citation], damages conclusively presumed by law [citations], or nominal damages [citation]." (*Id.* at pp. 1677–1678 & fn. 8.)

Appellant cites an appellate court case which appears to support her position, but is inapposite, as the court in that case reversed a dismissal to allow the plaintiff to amend the complaint to allege special damages. (See *Carr v. Progressive Casualty Ins. Co.* (1984) 152 Cal.App.3d 881, 892–893 [199 Cal.Rptr. 835] (*Carr*).)[12] Appellant does not claim to be able to amend the second cause of action to allege any damages other than Herron's emotional suffering, for which there is no recovery. (See Code Civ. Proc., § 377.34.)

Appellant also compares this case with *Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910 [148 Cal.Rptr. 389, 582 P.2d 980] (*Neal*), and *Romo v. Ford Motor Co.* (2003) 113 Cal.App.4th 738 [6 Cal.Rptr.3d 793] (*Romo*), in which the decedents' emotional distress was discussed in determining whether a punitive damage award was excessive, even though there could be no compensatory award for such emotional distress alone. (See *Neal*, at pp. 928–929; *Romo*, at pp. 760–762.) These cases are inapposite as well, as both involved actual awards of compensatory damages and raised no issue of punitive damages in the absence of compensatory damages. (See *Neal, supra,* 21 Cal.3d at p. 928; *Romo, supra,* 113 Cal.App.4th at p. 744.)[13]

Appellant contends her position is supported by the United States Supreme Court's approval of the consideration of potential harm when awarding punitive damages. (See *State Farm Mut. Automobile Ins. Co. v. Campbell* (2003) 538 U.S. 408, 418 [155 L.Ed.2d 585, 123 S.Ct. 1513]; *BMW of North America, Inc. v. Gore* (1996) 517 U.S. 559, 574–575 [134 L.Ed.2d 809, 116 S.Ct. 1589]; *TXO Production Corp. v. Alliance Resources Corp.* (1993) 509 U.S. 443, 462 [125 L.Ed.2d 366, 113 S.Ct. 2711].) The Supreme Court's recommendation was directed not to determining whether a pleading states a cause of action but, like *Neal* and *Romo*, to determining whether the amount of a punitive damage award is excessive. (See, e.g., *State Farm, supra,* 538 U.S. at pp. 418, 424.) The court held that the determination requires a comparison between the compensatory and punitive awards, warned that the ratio of punitive to compensatory damages should exceed a single digit only in extraordinary cases and suggested that a ratio of no more than four to one was reasonable in most cases. (*Id.* at p. 425.)

---

[12] *Carr*, in turn, relied on *Werschkull v. United California Bank* (1978) 85 Cal.App.3d 981 [149 Cal.Rptr. 829], in which an award of nominal damages supported a punitive award. (See *Carr, supra,* 152 Cal.App.3d at p. 892.)

[13] Indeed, the *Neal* court observed only that *had* the plaintiff survived, her damages for pain and suffering might have been substantial (*Neal, supra,* 21 Cal.3d at p. 929), while the *Romo* court expressly noted "the state law requirement that punitive damages to an estate are available only where (at least nominal) compensatory damages have been awarded . . . ." (*Romo, supra,* 113 Cal.App.4th at p. 762, fn. 13.)

Whatever the multiplier, of course, this case would result in a punitive damage award of zero. We agree that when there *is* a compensatory award, such damages may be *part* of the equation in determining whether an award of punitive damages is excessive. (See *Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1173–1174 [29 Cal.Rptr.3d 379, 113 P.3d 63] & fn. 3.) Here, however, as the only injury alleged in the second cause of action is emotional distress, it would not be a part of anything. (See Code Civ. Proc., § 377.34.)

Appellant cites *Gagnon v. Continental Casualty Co.* (1989) 211 Cal.App.3d 1598 [260 Cal.Rptr. 305], for the proposition that "the ratio method becomes troublesome, if not unworkable, where . . . the plaintiff is not entitled to an award of compensatory damages . . . ." (*Id.* at p. 1604.)[14] The court in *Gagnon* relied in part upon *Clark, supra*, 215 Cal. 279, but in *Clark*, damages were presumed by law. (See *Gagnon, supra*, at p. 1603, fn. 5.) The court in *Gagnon* also relied upon *Carr, supra*, 152 Cal.App.3d 881, which we have found inapposite, and upon *James v. Public Finance Corp.* (1975) 47 Cal.App.3d 995 [121 Cal.Rptr. 670]. (*Gagnon, supra*, 211 Cal.App.3d at p. 1604.) The court in *James* acknowledged that there can be no cause of action for punitive damages alone. (*James, supra*, at pp. 1000–1001.) However, despite this acknowledgement, the court upheld the judgment by "liberally" construing the $1,750 punitive damages verdict as including both compensatory and punitive damages, and considering the "0" placed in the blank for general damages to be a technical defect in form. (See *id.* at pp. 1005–1006.) As another division of this district observed, "[t]his 'liberal construction' is a euphemism for nullification." (*Jackson v. Johnson* (1992) 5 Cal.App.4th 1350, 1358 [7 Cal.Rptr.2d 482].) We agree, and decline to follow *James* or its progeny.

We conclude that an award of compensatory damages in some amount is a prerequisite to a punitive damage award, whether in the form of nominal damages (*Finney v. Lockhart* (1950) 35 Cal.2d 161, 163 [217 P.2d 19]), restitution (*Ward v. Taggart* (1959) 51 Cal.2d 736, 743 [336 P.2d 534]), an offset (*Esparza v. Specht* (1976) 55 Cal.App.3d 1 [127 Cal.Rptr. 493]), or damages presumed by law (*Clark, supra*, 215 Cal. at pp. 284–285). Thus, as Herron was prohibited by statute from recovering the only damages alleged, and there could be no cause of action for punitive damages alone, the SACC failed to state a cause of action for intentional infliction of emotional distress upon Herron.

---

[14] Citing *Romo, supra*, 113 Cal.App.4th at pages 760–761, appellant also argues that proportionality carries less weight when the wrongful conduct caused the death of the injured deceased. Not only is there no proportionality issue here, there is no allegation that Herron's alleged emotional distress was fatal.

### 5. Third Cause of Action of the SACC—Intentional Infliction of Emotional Distress (Appellant)

Appellant contends the trial court erred in dismissing the third cause of action of the SACC for intentional infliction of emotional distress upon appellant. There is no direct allegation that respondent personally did anything as an individual; the various acts were allegedly done either by all defendants or by the staff of 22125 Roscoe Corporation, the nursing facility. The cause of action was based upon an alleged plan by defendants to reduce the cost of Herron's medical care by coercing appellant to withdraw medical treatment and support. It was alleged that respondent "implemented" the plan with statements regarding appellant's welfare and her daughter's welfare, but the statements were not quoted, paraphrased or otherwise described. The third cause of action incorporated by reference from the second cause of action the allegation that defendants and their employees repeatedly urged appellant to authorize the caregivers to "pull the plug" on Herron's life-support systems, and argued that he would never recover, be able to function, return home, or live a normal life. The person who made the statements was not identified.[15] The remaining allegations of the third cause of action were not connected to the alleged plan, and all took place after Herron's death, when the alleged goal of the plan no longer existed.

The only acts arguably done personally by respondent are those allegedly committed by all defendants. Those acts consisted of "repeatedly" stating that Herron would never recover, be able to function, return home or live a normal life, and "arguing" with appellant over her refusal to order the discontinuation of Herron's life-support systems. Thus, we confine our discussion of intentional infliction of emotional distress to these acts.

■ "The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct. [Citation.]" (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 494 [76 Cal.Rptr.2d 540].) "In order to meet the first requirement of the tort, the alleged conduct ' ". . . must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." [Citation.] Generally, conduct will be found to be actionable where the "recitation of the facts to an average member of the community would arouse

---

[15] The SACC failed to identify the personnel who caused appellant's emotional distress, despite the trial court's suggestion, made when sustaining the demurrers to the emotional distress causes of action of the FACC, that appellant do so in her amended pleading.

his resentment against the actor, and lead him to exclaim, 'Outrageous!' " (Rest.2d Torts, § 46, com. d.)' [Citation.]" (*Ibid.*)

■ Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous. (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 499 [86 Cal.Rptr. 88, 468 P.2d 216].) Ordinarily, a medical diagnosis and treatment advice will not be considered outrageous unless they are false and given in bad faith. (Cf. *Trear v. Sills* (1999) 69 Cal.App.4th 1341, 1357–1358 [82 Cal.Rptr.2d 281] [false but good faith diagnosis of sexual abuse not outrageous].) The third cause of action asserts that defendants urged appellant to terminate Herron's life support allegedly in order to reduce the cost of reasonably necessary long-term care. There is no allegation that respondent's alleged motive was communicated to appellant—only that he spoke to her in terms of her husband's welfare, her welfare and that of their daughter. Nor is there any allegation that respondent's prognosis for Herron—that he would never recover, be able to function, return home or live a normal life—was incorrect, or that respondent believed it to be incorrect.

■ Once a physician determines that the patient is in a vegetative state from which he or she will not recover, it is appropriate to determine the wishes of the patient if expressed, and if not, whether the best interests of the patient would require continuance or discontinuance of life-sustaining measures. (See *Conservatorship of Drabick* (1988) 200 Cal.App.3d 185, 205, 209–211 [245 Cal.Rptr. 840].) Because this requires communicating with family members who will make the ultimate decision, such communications are appropriate, as are expressions of a physician's opinion regarding the best interests of the patient.[16] That respondent gave his opinion more than once over an unknown period of time does not, by itself, make the communication inappropriate. Nor does the communication become "outrageous" due to an alleged motive attributed to respondent by appellant. There is no allegation that respondent expressed any motive to appellant, and she has not suggested that an unexpressed motive can be the basis for a claim of intentional infliction of emotional distress.

We do not trivialize the anguish undoubtedly suffered by appellant upon hearing that her husband would not recover, or her distress in being urged to consider taking steps she chose not to pursue. We conclude, however, that as

---

[16] Withdrawal of life support is not the equivalent of physician-assisted suicide. (*In re Christopher I.* (2003) 106 Cal.App.4th 533, 548, fn. 2 [131 Cal.Rptr.2d 122].) Thus, communicating that option to the patient or his surrogate decision maker is not, as appellant suggests, aiding, advising or encouraging another to commit suicide, as prohibited by Penal Code section 401.

alleged, respondent's conduct cannot reasonably be found to be outrageous. As appellant does not claim to be able to allege additional facts, the trial court did not err in sustaining respondent's demurrer without leave to amend. (See *Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)

## DISPOSITION

The judgment is affirmed. Respondent shall have his costs on appeal.

Epstein, P. J., and Willhite, J., concurred.

A petition for a rehearing was denied July 13, 2007, and appellants' petition for review by the Supreme Court was denied September 19, 2007, S155054.