Filed 4/22/15  Ningbo Geosun Electronics v. EML Technologies CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| NINGBO GEOSUN ELECTRONICS CO., | B253339 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC421719) |
| v. | |
| EML TECHNOLOGIES, et al., | |
| Defendants and Respondents. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Victor E. Chavez, and Alan S. Rosenfield, Judges.  Affirmed.

Law Office of Lawrence P. House and Lawrence P. House for Plaintiff and Appellant.

Goldberg, Stinnett, Davis & Linchey and Dennis D. Davis for Defendants and Respondents.

Plaintiff and appellant Ningbo Geosun Electronics Co. ("Geosun") appeals from a judgment after bench trial in favor of defendants and respondents Wade Lee ("Lee") and Illumination Dynamics, LLC ("ID"). Geosun, a Chinese manufacturer of lighting products, originally brought contract and fraud claims against its wholesaler, EML Technologies, LLC ("EML"); EML's two owners, Lee and Elliot Aronson ("Aronson"); and another wholesaler, ID, which was owned and operated by Lee and Aronson. Only Geosun, Lee, and ID are parties to this appeal. Nevertheless, in this appeal, Geosun challenges the court's April 21, 2011 order sustaining EML and Aronson's demurrer to the fraud cause of action in Geosun's second amended complaint. Geosun also challenges the court's finding after trial that Geosun failed to prove that EML owed it over $10 million for unpaid invoices. We affirm.

<strong>FACTUAL AND PROCEDURAL SUMMARY</strong>

**I.      Factual Background**

**A.      The Parties**

Geosun, located in China, is a manufacturer of lighting products. EML, a California limited liability company, designed and sold halogen work lights and motion-detector lights. Lee and Aronson were the sole owners and members of EML, owning 75 percent and 25 percent, respectively. EML sold its products to large retailers such as Costco, Home Depot, Lowe's, and Sears. EML filed for bankruptcy in 2012 and was no longer in business at the time of the trial.

ID is a California limited liability company formed in September 2009 by Lee, Aronson, and Tim Monroe ("Monroe"), who is not a party to this litigation. ID sells high-end motion-detector lights and L.E.D. security area lighting to large-scale distributors. ID's products are different from and rely on different technology than EML's products. At the time of its formation, Lee owned between 70 and 75 percent of

2

ID, Aronson owned 5 percent, and Monroe owned between 20 and 25 percent.[1] By the time of trial, Aronson had sold his interest in ID to either Lee or Monroe.

### B. The Relationship Between EML and Geosun

In late 1999 or early 2000, EML and Geosun entered into an agreement to manufacture and sell lighting products in North America. Under the agreement, Geosun manufactured the products, and EML purchased, marketed and sold them to retailers. Until mid-2008, EML regularly paid Geosun's invoices. However, Geosun alleges that from mid-2008 through 2009, EML's payments became sporadic and no longer corresponded to Geosun's invoices. By mid-2009, EML purportedly had not paid over $10 million of Geosun's invoices.

## II. Procedural History

### A. Pre-Trial Proceedings

In September 2009, Geosun filed its complaint against EML, Lee, Aronson, and Does 1 through 20, alleging causes of action for breach of contract and goods sold and delivered.[2] Geosun based both causes of action on EML's, Lee's, and Aronson's alleged nonpayment of over $10 million for goods Geosun produced and sold to them. Geosun also alleged that EML was the alter ego of Lee, Aronson, and the Doe defendants.

In November 2010, Geosun filed a first amended complaint adding a cause of action for fraud. Geosun alleged, on information and belief, that EML, Lee, Aronson, and Does 1 through 20 fraudulently ordered products from Geosun but only intended to pay for a portion of them. Geosun further alleged defendants hoped their nonpayment would drive Geosun to insolvency and that, as a result, defendants would not have to pay for the products they received. EML and Aronson demurred to the fraud cause of action. They argued that Geosun could not allege fraud on "information and belief," did not

---

[1] The discrepancy in the record over the precise ownership interests is inconsequential in this appeal.

[2] EML filed a cross-complaint against Geosun, but it was dismissed prior to trial and does not factor in this appeal.

3

allege facts sufficient to support a fraud cause of action, and did not meet the heightened pleading standard for fraud against a company. The court sustained the demurrer with leave to amend. Neither Lee nor ID responded to the first amended complaint because Geosun had not served Lee or named ID as a defendant before the court sustained EML and Aronson's demurrer.

In March 2011, Geosun filed its second amended complaint against EML, Lee, Aronson, and Does 1 through 20, again alleging causes of action for breach of contract, goods sold and delivered, and fraud. Geosun again alleged that EML was the alter ego of Lee, Aronson, and the Doe defendants. In its cause of action for fraud, Geosun alleged that "in placing purchase orders, in purchasing additional products from [Geosun], in taking receipt of those products and by re-selling those goods to their customers, Defendants Lee, Aronson, EML and Does 1 through 20 impliedly represented and promised" that they would pay for the products, even though they "had no intention of fully performing their obligation to pay for all the products ordered and purchased from" Geosun. EML and Aronson again demurred to the fraud cause of action, arguing that Geosun could not allege fraud on "information and belief" and that it failed to allege facts sufficient for fraud.

On April 11, 2011, default was entered against Lee.

On April 21, 2011, the court sustained EML and Aronson's demurrer without leave to amend. The order stated that EML and Aronson's demurrer was "[s]ustained without leave to amend as to the Third (3rd) cause of action [for fraud]. Answer to be filed within fifteen (15) days." At the time of this order, Lee was in default and ID had not been named as a defendant. Therefore, neither participated in the demurrer proceedings.

On May 4, 2011, Lee moved to vacate his default on the ground that summons and the complaint had not been served on him. The court granted Lee's motion. Thereafter, Geosun served Lee with summons and the second amended complaint. Instead of demurring, Lee answered. Lee generally denied all allegations. As an affirmative defense, he alleged that "the Second Amended Complaint fails to state a claim for fraud

4

and punitive damages. Per the Court's ruling on April 21, 2011, Defendant EML's demurrer was sustained as to the fraud cause of action without leave to amend."

Aronson filed a motion for summary judgment on May 12, 2011. The court granted the motion and entered judgment in favor of Aronson in October 2011. Geosun timely appealed, but it failed to file an opening brief. Accordingly, we dismissed the appeal pursuant to California Rules of Court, rule 8.140(b).

In January 2012, Geosun filed a fictitious name amendment, substituting ID for Doe 11. ID promptly demurred to the second amended complaint. ID argued that the causes of action for breach of contract and goods sold and delivered and the alter ego allegations against ID all failed because they were based on conduct that occurred before ID was formed. ID stated that "[t]he Court previously dismissed Plaintiff's Third Cause of Action for Fraud with prejudice. Consequently, there are two remaining causes of action in the [second amended complaint] . . . ." Geosun opposed ID's demurrer, but it did not respond to ID's contention that the court had dismissed the fraud cause of action. The court sustained the demurrer with leave to amend.

On May 3, 2012, EML filed a voluntary chapter 7 bankruptcy petition. A few days later, it filed a notice of bankruptcy stay in the trial court. On May 23, 2012, the court ordered the case stayed as to EML only.

On May 15, 2012, Geosun filed its third amended complaint against EML, Lee, and ID, retaining its causes of action for breach of contract and for goods sold and delivered, but replacing its cause of action for fraud with one for fraudulent transfer.[3] In its fraudulent transfer cause of action, Geosun alleged that defendants conspired to form ID, divert EML's business and assets to ID, and commence bankruptcy proceedings for

---

[3] Even though the court already had entered judgment in favor of Aronson, Geosun's third amended complaint named Aronson as a defendant in all causes of action, including fraudulent transfer. Geosun did not pursue these claims against Aronson, and it appears that all parties and the court ignored them.

EML, all in an attempt to avoid paying EML's outstanding debt to Geosun. Geosun also amended its alter ego allegations to allege that EML was the alter ego of Lee and ID.[4] ID demurred to all claims and Lee filed a motion to strike the entire third amended complaint. Geosun voluntarily dismissed its fraudulent transfer cause of action. The court then overruled ID's demurrer and denied Lee's motion to strike.

A jury trial began in October 2012 but ended in mistrial due to the sudden unavailability of one of Geosun's key witnesses. The court then ordered the case stayed in its entirety pending EML's bankruptcy proceedings.

The record is silent as to how and when EML was dismissed from the case. However, at a March 7, 2013 status conference, the court stated that "[t]he only remaining parties in the case are Plaintiff Ningbo Geosun Electronic Co LTD and Defendants Wade Lee and Illumination Dynamics, LLC."[5] The court then lifted the stay.

## B.     Bench Trial

In September 2013, the court held a bench trial on Geosun's causes of action for breach of contract and goods sold and delivered. Geosun sought to establish that EML owed Geosun over $10 million in unpaid invoices and that Lee and ID, as EML's alter egos, were liable for this debt. During Geosun's case in chief, the court admitted into evidence 797 pages of supposedly unpaid invoices for goods Geosun had sold to EML. Geosun's vice president of sales testified that EML consistently paid these invoices until June 2008. Thereafter, EML made sporadic and incomplete payments to Geosun and no longer referenced the invoices in its payments. By July 2009, EML was more than $10 million in arrears. Geosun also introduced testimony from an expert in general accounting, who opined that Lee and ID used EML as an alter ego to shield themselves from liability to Geosun.

---

[4]     The third amended complaint does not contain alter ego allegations against Aronson.

[5]     The parties do not dispute the propriety of EML's dismissal.

6

Lee testified that in 1999, he and Geosun's owner, Mr. Tu, entered into an oral agreement governing the relationship between EML and Geosun. EML and Geosun agreed to design, make, and sell motion-detector and work lights to customers in North America. Under the agreement, Geosun purchased the materials and components and then assembled and shipped the products directly to EML's customers. Geosun agreed to manufacture products to EML's specifications, maintain product quality, and keep its factory in compliance with the social standards mandated by EML's customers.

According to Lee, EML and Geosun agreed that EML would pay Geosun for orders only after Geosun shipped the products to EML's customers and EML's customers paid EML for them. Pursuant to the agreement, EML and Geosun would only sell to creditworthy customers and decide together which customers to pursue. They also agreed that EML would incur the cost for product returns of up to 3 percent of sales (i.e., a 3 percent "defect rate"). Geosun agreed to incur the cost of defect rates over 3 percent.

Aronson testified that EML stopped making payments because Geosun failed to perform under the terms of the agreement between EML and Geosun. Beginning in 2008, the quality of Geosun's products declined drastically. Geosun began substituting parts that did not conform to EML's specifications and producing products with other manufacturing defects. Increased returns and several major recalls of EML's products followed. For instance, in early 2008, Underwriter's Laboratories, a nationally recognized standards testing organization, initiated a recall of EML lights. As a result, Home Depot recalled approximately 250,000 EML lights and charged-back millions of dollars to EML. EML was forced to open and staff a facility in Tennessee to re-work many of the faulty lights at a cost of approximately $1.3 million. Lowe's also issued two unrelated recalls of EML products in 2008 and 2009.

Further, Geosun's vice president of sales admitted that in the second half of 2008 and throughout 2009, Geosun shipped EML products late 80 to 90 percent of the time. EML incurred penalties from its customers for these late shipments.

According to Aronson, EML suffered financially from these customer returns and recalls and EML's late shipments. EML's customers either did not pay for products,

7

issued penalties, or made charge-backs to EML. Under the terms of the EML-Geosun agreement, EML passed these expenses on to Geosun.

At the end of the trial, the court made the following findings: (1) Geosun failed to introduce sufficient evidence that it performed its contractual obligations to EML by delivering goods that conformed to the contract; (2) Geosun failed to introduce evidence sufficient for the court to determine whether EML owed Geosun any damages and, if so, the amount of damages; and (3) Geosun failed to prove that EML was the alter ego of either Lee or ID. Accordingly, the court entered judgment in respondents' favor.

Geosun timely appealed.

## DISCUSSION

### I. The April 21, 2011 Order Sustaining the Demurrer Without Leave to Amend

Geosun challenges the court's April 21, 2011 order sustaining EML and Aronson's demurrer to the cause of action for fraud in the second amended complaint without leave to amend.[6] We requested additional briefing from the parties to address whether the order sustaining the demurrer brought by EML and Aronson—who are not

---

[6] Respondents contend that Geosun has not appealed the April 21, 2011 order because Geosun did not identify the order in its notice of appeal. We conclude that the April 21, 2011 order is not reviewable in this appeal for other reasons, discussed *infra*. However, we disagree with respondents that Geosun was required to identify a nonappealable interim order in its notice of appeal.

An order sustaining a demurrer is not directly appealable. (Code Civ. Proc., § 904.1; *Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1695.) Instead, an order sustaining a demurrer is reviewable on appeal from a final judgment. (Code Civ. Proc., § 906; *Jennings v. Marralle* (1994) 8 Cal.4th 121, 128.) A notice of appeal must identify the appealable order or judgment being appealed. (Cal. Rules of Court, rule 8.100(a)(2).) But "[a] prior nonappealable order or ruling need not be specified in the notice of appeal from a subsequent appealable judgment." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1997) ¶ 3.119; see also *id.*, ¶ 2:10; *Gavin W. v. YMCA of Metropolitan Los Angeles* (2003) 106 Cal.App.4th 662, 668–669.)

8

parties to this appeal—is subject to review in this appeal against Lee and ID.[7] Geosun argues that the April 21, 2011 order "applied equally" to respondents, that "the court's ruling was absolute and encompassed all of the parties to [the fraud] cause of action," and that it "is of no moment" that neither respondent "participate[d] in the April 21, 2011 demurrer." We disagree and conclude that the April 21, 2011 order is not subject to review in this appeal.

Only EML and Aronson filed the demurrer at issue. The court's April 21, 2011 order stated that EML and Aronson's demurrer was "[s]ustained without leave to amend as to the Third (3rd) cause of action" for fraud. The order did not purport to sustain the demurrer as to all named and Doe defendants or to strike or dismiss the fraud cause of action from the second amended complaint. The court clearly sustained the demurrer to the fraud cause of action only as to EML and Aronson.[8] Geosun cannot seek review of this order in an appeal against non-demurring defendants Lee and ID. (See *Berkley v.*

---

[7] Geosun acknowledges that Lee was not a party to the demurrer, as he had not made a general appearance before the April 21, 2011 order. Geosun likewise acknowledges that it did not amend its complaint to name ID as a defendant until well after the April 21, 2011 order. However, Geosun contends that ID was a party at the time of the order because ID replaced Doe 11.

[8] Further, at the time that the court sustained the demurrer, neither Lee nor ID had made an appearance in the action. The court lacked jurisdiction to sustain a demurrer as to defendants before they appeared. (*Goland v. Peter Nolan & Co.* (1936) 15 Cal.App.2d 696, 699.) "The order made by the superior court sustaining the demurrer without leave to amend must be construed with reference to the condition of the pleadings and the parties against whom judgment could have been rendered. [Citation.]" (*Id.* at p. 700.) At the time of the April 21, 2011 order, the court only could have entered judgment against EML and Aronson. Thus, the order sustaining the demurrer without leave to amend could not have applied to respondents. Indeed, "it would have been irregular to have rendered a judgment or order against [respondents] before they had been served with summons or had made an appearance, and a judgment or order so rendered would be reversible on appeal. [Citations.]" (*Ibid.*) Absent something contrary in the record, we presume that the court acted within its jurisdiction and correctly limited the April 21, 2011 order to EML and Aronson. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

9

*Dowds* (2007) 152 Cal.App.4th 518, 525-526 [no order subject to review on appeal where respondent did not demur and appellant challenges orders sustaining other defendants' demurrers].)

Geosun also argues that the order is reviewable because any argument respondents could have presented would not have changed the outcome and because respondents benefited from the April 21, 2011 order. Geosun cites no authority for these propositions. Nor does it explain how these contentions would render the April 21, 2011 order reviewable at this juncture. Neither argument overcomes the fact that the April 21, 2011 order did not encompass, and could not have encompassed, respondents.

Accordingly, we find that the April 21, 2011 order did not apply to respondents and that the order is not subject to review in this appeal.[9]

## II. The Judgment in Favor of Lee and ID

The other issue on appeal is, in Geosun's words, "[w]hether the trial court erred in concluding, after receiving into evidence 797 pages of invoices evidencing the undisputed purchase of over $10,828,366 worth of goods manufactured and sold by Geosun which, it was undisputed, had not been rejected, that 'Plaintiff has failed to prove that $10 million-plus is owed.'" Because Geosun fails to challenge the court's underlying finding that Lee and ID had no alter ego liability, the issue of EML's liability is irrelevant and we decline to review it.

Geosun based its claims against Lee and ID on EML's supposed indebtedness to Geosun for over $10 million in unpaid invoices. It is undisputed that the oral contract at issue was between EML and Geosun, that EML sent purchase orders to Geosun, and that

---

[9] Geosun had an opportunity to challenge the April 21, 2011 order on appeal. Goesun appealed from the grant of summary judgment in favor of Aronson. The April 21, 2011 order would have been subject to review as to Aronson in that appeal. However, we dismissed the appeal for lack of prosecution after Geosun failed to file an opening brief. In addition, although we express no view on the point, respondents suggest that Geosun could have brought its fraud claim against EML in the bankruptcy proceedings.

Geosun issued invoices to EML. Geosun sought to prove at trial that Lee and ID were liable for EML's contractual indebtedness solely on the theory that EML was the alter ego of Lee and ID. Thus, under Geosun's theory, respondents' liability hinged on a finding that EML was their alter ego.

However, Geosun does not challenge the court's conclusion that Geosun failed to prove that EML was the alter ego of either Lee or ID. By failing to address the court's alter ego finding, Geosun has forfeited its right to challenge it. (*Kelly v. CB&I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 451-452; *Lyons v. Chinese Hosp. Ass'n* (2006) 136 Cal.App.4th 1331, 1336, fn.2.) Without alter ego liability, Lee and ID could not be liable for any indebtedness EML may have had to Geosun. Thus, even if we concluded that the court erred in finding that EML did not owe over $10 million to Geosun, the judgment would stand. Because our resolution of the issue Geosun raises on appeal would not affect the judgment, we decline to review it. (See *Kaiser Foundation Health Plan, Inc. v. Superior Court* (2012) 203 Cal.App.4th 696, 715-716 ["We decline to review an issue that will have no effect on the parties."]; see also Civ. Code, § 3532 ["The law neither does nor requires idle acts."]; *Garibaldi v. Daly City* (1943) 61 Cal.App.2d 514, 517 ["An appellate court will not determine a question which will have no effect upon the status of the parties."].)

Accordingly, we affirm the judgment.

11

**DISPOSITION**

The judgment is affirmed.  Respondents are awarded their costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



COLLINS, J.


We concur:



EPSTEIN, P. J.



WILLHITE, J.



12