Filed 11/18/15  Moore v. JMK Golf CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| AMY MOORE, | H039522 |
| Plaintiff and Respondent, | (San Benito County Super. Ct. No. CU-11-00162) |
| v. | |
| JMK GOLF, LLC, | |
| Defendant and Appellant. | |

Amy Moore, discharged from employment in her third trimester of pregnancy, sued her former employer, defendant JMK Golf, LLC, alleging an unlawful termination under the Fair Employment and Housing Act (FEHA).  (Gov. Code, §§ 12940, 12945.) Plaintiff claimed she was terminated because of her pregnancy; defendant did not want to keep her job open or pay her medical insurance while she was on maternity leave.  By special verdict the jury found defendant's decision to discharge plaintiff was motivated at least in part by plaintiff's pregnancy but was not a substantial factor in causing harm to plaintiff, and it awarded no compensatory damages.  By separate special verdict, the jury found defendant acted with "malice, oppression, or fraud," and awarded plaintiff $150,000 in punitive damages. [1]

Defendant appeals from the judgment, arguing that the trial court erred by denying its motion for judgment notwithstanding the verdict to set aside the punitive damages

_____

[1] Plaintiff also alleged violations of the Labor Code regarding meal breaks, overtime, and recordkeeping.  The jury returned defense verdicts on those claims which are not part of this appeal.

award.  Specifically, defendant argues that the trial court erred by upholding the jury's $150,000 punitive damages award because plaintiff failed to prove harm or damages resulting from defendant's discharge decision.  We will reverse the judgment because plaintiff failed to prevail on any requisite cause of action to support the award.

## I.  TRIAL COURT PROCEEDINGS

### A.    PLAINTIFF'S CASE

On May 31, 2011 plaintiff was terminated from her server position at the Ridgemark Golf and Country Club (Ridgemark).  She was 38 weeks pregnant and ten days shy of a scheduled three-month maternity leave.  Plaintiff had worked at Ridgemark for eight years where she was well known and well liked by the clientele.  Plaintiff's grandparents were members at Ridgemark, and her wedding took place there.

In June 2009, JMK Golf, LLC, owned by John and Alex Kehriotis, purchased Ridgemark.  In late March or April 2011, Anthony Ybarra, the new food and beverage director, told plaintiff that defendant was eliminating full-time employees and, as a result, she would be losing her medical insurance.  Plaintiff was so upset by this news that management agreed to extend plaintiff's insurance coverage through her June due date.

Plaintiff was terminated for failing to charge customers for a pack of cigarettes and a round of drinks during a busy Memorial Day shift.  According to plaintiff, her action was inadvertent and unintentional, and the bartender, Janis Cunningham, was equally at fault.  Plaintiff was serving several tables, both in the lounge and on the outside patio.  A group seated at an outside table asked for a pack of cigarettes.  Plaintiff was friends with the group.  She retrieved the cigarettes from behind the bar because Cunningham had stepped away.  Afterwards, a customer from the same table shouted to plaintiff on his way to the restroom:  "Amy, I need three shots immediately of Jaegermeister outside."  Cunningham poured the shots, and plaintiff, who had been standing at the bar, delivered the drinks to the outside table, where her attention immediately turned to the 15 or 20 other people on the patio.  She also was busy with

2

inside tables and, as a result, she forgot to ring up the shots and the cigarettes. At 5:00 p.m., she turned her friends' table over to another server, foregoing any tip she may have received on the tab exceeding $100. She never prepared drinks or took drinks from behind the bar. The shots and pack of cigarettes were the only items she failed to charge for that day.

The next day plaintiff met with Ybarra, Lori Castello, who worked under Ybarra, and human resources manager Denise Garcia. Although the managers were discussing three shots of Jaegermeister and a pack of cigarettes, plaintiff had no idea what they were talking about until they showed her a video and asked her if it showed her serving the shots. Plaintiff admitted serving the shots and cigarettes to her friends, but she denied that her failure to charge for the items was intentional. She testified that the video showed Cunningham pouring the shots. She begged to keep her job, offering to pay for the items, which sold for $6 each, but Ybarra terminated her.

Plaintiff, her floor supervisor Tiffany MacIntosh, fellow server Katie Scoggin, and former food and beverage director Sandra Weis each testified to the protocol in place for insuring that drinks were charged to customers. When a server would input a drink order into the computer, the computer would charge the customer and generate a ticket for the bartender. When the bartender would pour a drink for a server without a ticket, the bartender would be equally responsible for seeing that the drink was charged to the customer by hand writing a ticket and giving it to the server or taping it to the monitor so the server would see it. The server would later input the order into the computer with a notation that the drink had already been poured. Each witness testified that everyone at some point had failed to ring up a drink and no one had ever been fired for such conduct.

Plaintiff's witnesses testified that the shared responsibility protocol was posted in two employee areas. When Scoggin learned of plaintiff's discharge, she was upset that nothing had happened to Cunningham who, by failing to write a ticket for the Jaegermeister, was equally responsible for the failure to charge the customer. After

3

plaintiff was discharged, Scoggin and MacIntosh noticed that those postings had been removed. Scoggin also testified that the day after plaintiff was terminated, Castello had told her that they fired plaintiff because they could not keep her on through her maternity leave, and, within a week's time, Scoggin overheard Garcia tell Castello "[i]t's better this way. Now we don't have to worry about her pregnancy."

Plaintiff testified that she was a "loyal, dedicated and really hard worker" at Ridgemark for eight years and that her termination was probably the worst thing that had ever happened to her. Thirty-eight weeks into her pregnancy, she worried about having her baby with no insurance, and about how she and her husband would pay bills and raise a baby on his income alone. She enjoyed her newborn less because she was stressed about not having a job to return to, and the memories of the termination would resurface when she would run into her former customers in the community. Although she had applied to local restaurants, she had not worked since her discharge. She had intended to return to Ridgemark in September 2011, and she sought damages in the form of lost wages based on her full-time schedule.

Defendant disputed plaintiff's claim for unemployment insurance benefits. Plaintiff prevailed at a hearing before an administrative law judge (ALJ) and the ALJ's written decision was entered into evidence. The ALJ found that plaintiff was discharged for "failure to ring-up two orders for cigarettes and one order for three drinks, resulting in the failure of the employer to receive payment from these customers for those items." The ALJ also found that plaintiff credibly testified that she did not intentionally fail to ring up the items and that the evidence at that hearing showed that plaintiff acted with ordinary negligence or inadvertence, not misconduct.

B.   DEFENDANT'S CASE

Alex Kehriotis testified that he and his father purchased Ridgemark in June 2009 when the club was in financial jeopardy. As a necessary cost-saving measure, in March 2011 they decided to discontinue health insurance coverage for part-time employees.

4

John Kehriotis testified that some employees were reduced from full time to part time as a cost saving measure. As a favor, management agreed to keep plaintiff on Ridgemark's health plan until she delivered her baby. Plaintiff had told Garcia that "it was going to work out good" because she thought she would be eligible for health insurance through her husband's new employer after her Ridgemark insurance was earmarked to lapse.

In response to management's concern of employee theft in the restaurant Ybarra notified staff that he would be enforcing the company's "zero tolerance of theft" policy. Soon after he started in March 2011, he held a staff meeting to highlight that policy. Plaintiff was aware of the policy; she had attended the meeting and recalled Ybarra's demeanor as stern.

Cunningham testified that she observed plaintiff go behind the bar where she took two Tecate beers and a pack of cigarettes, and Cunningham never saw a ticket for the items. Cunningham could not remember whether she had asked plaintiff if she had rung the items. She explained that it was not her responsibility to do so: "[I]f I'm out of the room, how am I supposed to know they took it?" She reported the incident to Castello, who in turn told Garcia.

Garcia spent several hours on May 31 reviewing the previous day's video footage of the bar area. She observed plaintiff go behind the bar and take a pack of cigarettes, which plaintiff delivered to an outside table. She testified that plaintiff "[t]hroughout the day [] had poured her own orders and taken them to tables," and that plaintiff "took more cigarettes out … to tables." Although orders were processed through the computer, plaintiff "was skipping the step of the computer, which means she was giving it away." From the video, the lounge did not appear to be particularly busy.

Garcia concluded that plaintiff was stealing based on the video and plaintiff's receipts: "If you look at the video and you see her taking cigarettes, then you go through her paperwork, and nowhere on her paperwork did she ring up cigarettes." According to Garcia, plaintiff took what she poured, not what the bartender poured. Garcia believed

5

that plaintiff's actions were intentional because "you might forget one order during the day, but to do it consistently throughout your whole shift, that doesn't make sense in this business." Plaintiff was discharged for theft; her termination had nothing to do with her pregnancy or health insurance.

Ybarra testified that the video showed plaintiff in separate instances take cigarettes, beer, and a round of drinks. He made the decision to terminate plaintiff with input from all management and Alex Kehriotis. Ybarra terminated plaintiff, who could not identify the missing items on her paper work, after she viewed the video.

The video was not entered into evidence. Ybarra testified that the video was lost during an attempted download due to mechanical failure. Garcia explained that "that video only had a two-week time frame on it because it was an old system" and that they could not reach the man who would make recordings for them before it was lost.

Although plaintiff generally worked until 8:00 p.m. or 9:00 p.m., she wanted to work a limited day shift following her return from maternity leave, and she had discussed her desired schedule change with Ybarra.

Garcia denied making the statement to Castello supposedly overheard by Scoggin. Castello denied that Garcia commented to her about the reason for plaintiff's termination, and she denied referencing plaintiff's pregnancy as a reason for her termination.

C.    **THE JURY INSTRUCTIONS AND SPECIAL VERDICTS**

Tracking the language of the 2012 jury instructions on disparate treatment (former CACI 2500) and retaliation (former CACI 2505) the court instructed the jury on the FEHA claim as follows: "[Plaintiff] claims that [defendant] terminated her because [defendant] did not want to have to keep her job open while she was out on pregnancy leave and [defendant] did not want to pay her medical insurance. [¶] To establish this claim, [plaintiff] must prove either of the following was a motivating reason for terminating [plaintiff]: [¶] First, that [defendant] terminated [plaintiff] because of her pregnancy, or, secondly, that [defendant] terminated [plaintiff] because she exercised her

6

right to take a pregnancy disability leave." The court also instructed on motivating reason under former CACI 2507: "A motivating reason is a reason that contributed to the decision to take certain action, even though the other reasons also may have contributed to the decision."

The jury received seven special verdict forms. Form one, pertaining to the FEHA claim, contained seven questions. For questions one through six, the form instructed the jury to continue to the next question if it answered "yes" to the preceding question, but to "stop" and "answer no further questions" if it answered the preceding question "no." The jury answered "yes" to the first five questions,[2] it answered "no" to question six, and it did not answer question seven. Question six asked "Was [defendant's] decision a substantial factor in causing harm to [plaintiff]?" Question seven asked "What are [plaintiff's] damages?" and was further broken down into four subparts with delineations for past lost earnings, future lost earnings, past noneconomic loss including physical pain and mental suffering, and future noneconomic loss including physical pain and mental suffering.

Special verdict forms two through six, pertaining to plaintiff's wage and hour claims, were answered in favor of defendant.[3] Special verdict form seven addressed punitive damages in two parts. The first question, which the jury answered "yes," asked whether defendant "engage[d] in the conduct with malice, oppression, or fraud?" Next to the second question-"What amount of punitive damages, if any, do you award [plaintiff]?"-the jury wrote "$150K."

During deliberations, the jury asked two questions. In response to the first question-"What constitutes motivating reason? A, a reason. B, the reason."-the court

---

[2] Those questions were: (1) "Was [defendant] an employer?" (2) "Was [plaintiff] an employee of [defendant]?" (3) "Did [defendant] know that [plaintiff] was pregnant?" (4) "Did [defendant] discharge [plaintiff]?" and (5) "Was [plaintiff's] pregnancy a motivating reason for [defendant's] decision to discharge [plaintiff]?"

[3] The jury found that defendant did not deny plaintiff meal breaks or overtime pay.

7

instructed the bailiff to refer the jury to the instruction defining motivating reason. That instruction read: "A motivating reason is a reason that contributed to the decision to take certain action, even though the other reasons also may have contributed to the decision." The bailiff reported back that the jury had "figured it out before I could tell them."

The next day the jury asked: "Are findings for verdict form 1, question number 6, and verdict form 7, question number 2, mutually exclusive or dependent upon each other?" The bailiff told the court that the jury "thought maybe if you wanted to bring them out, they can explain it to you a little better." The court observed that the first special verdict form pertained to the FEHA claim and special verdict form seven dealt with punitive damages. The court read the two questions into the record ("Was [defendant's] decision a substantial factor in causing harm to [plaintiff]?" and "What amount of punitive damages, if any, do you award [plaintiff]?") and noted outside the jury's presence: "I think counsel both agree with me, we don't see the conflict, and the jury should be instructed to just simply answer these questions to the best of their ability." Counsel for plaintiff agreed but counsel for defendant said, "I'm unclear as to what the confusion of the jury is, because I think the question number 2 in punitive asks for an amount, correct? Punitive number 2 asks for an amount." The court responded: "Yes, we'll go ahead and bring them in, and I'll just ask if there is anything else they need; otherwise, I'll instruct them to answer to the best of their ability."

The jury returned to the courtroom where the court read the question and instructed "I would say really neither. You just answer these questions in the best way you can, based on the evidence and the law. You don't reference one or the other. You just deal with each question as it comes up. [¶] I don't see the question asking for mutually -- whether they're mutually exclusive or dependent. I don't see it either way. You just answer these questions to the best of your ability, okay?" The foreperson responded "Okay," and both counsel responded "No" when the court asked whether there was any exception to the given response. Shortly thereafter, the jury reached its verdicts,

which were discussed by the court and counsel outside the presence of the jurors, who were not released.

In the court's view, there was a problem with the FEHA special verdict because the jury found that plaintiff's pregnancy was a motivating reason for her discharge, while at the same time it found that defendant's decision was not a substantial factor in causing harm to plaintiff. The court also noted that the jury found malice, oppression, or fraud, and it awarded $150,000 in punitive damages. The court explained: "So it appears to me that even though they found the pregnancy was a motivating reason -- and by the definition of 'motivating reason' in the jury instructions, a motivating reason is a reason that contributed to the decision to take certain action even though other reasons also may have contributed to the decision. [¶] So it seems apparent what they did is they found it was a contributory reason but not a substantial reason. Now, I suspect the law anticipates that if it qualifies as a motivating reason, it per se has to be a substantial reason. [¶] … Substantial does have a ring to it that the jury no doubt felt meant more than just contributory."

Counsel provided input, with plaintiff seeking an agreement that the jury intended to award $150,000 on the FEHA claim. Defendant disagreed, explaining "I think the jury may have been confused in the -- originally they had -- the first question they had was the motivating factor question, and then by the time we came in they said they figured it out. [¶] So I think they felt that if it was just a factor, not a substantial factor, it would qualify as saying 'yes' to the question whether pregnancy was a motivating factor in termination, not so much as a substantial factor or the bigger reason for the termination. That's why they answered 'no' to the substantial harm. [¶] Given that that's how they felt, they just were confused on the law. It's our position that the punitive damages they awarded is not based upon or it's not based on the facts and the law and what they intended to do or what they understood the law to be. Because there's no actual damages, and they believe that there was not a substantial harm."

9

The court then suggested providing the jury an additional instruction on "substantial factor" using CACI 430.[4] Defendant queried whether that would result in a mistrial, concerned that the jury would find a legal reason to support the $150,000 award and change their verdict to do so. Initially the court agreed: "[I]f I … allude to the fact that there may be a difference between a motivating reason and a substantial factor, then I am, I think, unduly suggesting they have got to change something, and they have decided it wasn't a substantial factor. [¶] … [A]nything I do with the jury right now, I think I would be prodding them in some direction that they elected not to take."

The court clarified that plaintiff obtained a verdict for $150,000 in punitive damages, and defendant obtained verdicts "on everything else." Counsel for defendant interjected that she would make a motion for judgment notwithstanding the verdict because there was no legal sufficiency to support punitive damages. She explained: "The jury made it clear it was not a substantial harm. So I think the court on its own motion can do a judgment to set aside the punitive damages. If the court's not inclined to do so, I will make an oral motion today and then file one shortly thereafter."

After a brief recess, the court decided it had an obligation to define substantial factor and to give the jury the chance to determine whether it wanted to stand on its special verdict. Although counsel for defendant maintained a continuing objection to seeking any clarification from the jury, she asked that the punitive damages issue not be raised. Counsel explained that the jury should not be alerted that it had to find a substantial factor to make a punitive damages award, and asked that only the FEHA special verdict form be presented to the jury for reconsideration.

---

[4] CACI 430 reads: "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. [Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.]"

10

The court agreed to limit the jury's inquiry to question six on the FEHA verdict form, called the jury back, read CACI 430, and asked the jury to consider the definition of substantial factor and decide whether it wanted to keep or change its answer. The jury deliberated briefly and made no change to that verdict.

**D.  DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT**

By motion for judgment notwithstanding the verdict, defendant moved to set aside the punitive damage award based on legal insufficiency, claiming (1) no substantial evidence to support the jury's finding that defendant acted with malice, oppression, or fraud; (2) the punitive damages award was improper because plaintiff failed to prove actual damages; and (3) the punitive damages award violated defendant's Fourteenth Amendment to the United State's Constitution right to due process. The hearing on defendant's motion was not reported because neither party arranged for a court reporter.

In its statement of decision denying the motion, the court found: (1) "By their verdict, the jury found that [defendant] manufactured a pretextual reason for [plaintiff's] termination: they falsely accused her of stealing when their true motivation was to terminate [plaintiff] because they did not want to accommodate her pregnancy;" (2) "The jury made clear they intended to award [plaintiff] $150,000;" (3) "[Plaintiff] suffered actual damages and harm" in lost wages and medical benefits and her discharge "stigmatized her in a small, close-knit community because it was widely understood that the termination was a result of her stealing;" and (4) "The jury clearly intended to affix damages against [defendant] in the amount of $150,000, and were informed that they were not restricted in how they rendered their decision." The court noted the jury's question, paraphrased as "whether the verdict form question relating to punitive damages was dependent on an earlier question on the form relating to whether defendant's decision to terminate plaintiff was a substantial factor in causing her harm," and that both counsel agreed the correct answer was no.

11

The court entered judgment in favor of plaintiff for $150,000 composed entirely of punitive damages. The court deemed plaintiff to have prevailed on her FEHA claim and defendant to have prevailed on plaintiff's labor law claims.

## II. DISCUSSION

### A. STANDARD OF REVIEW

" 'A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied.' " (*Hauter v. Zogarts* (1975) 14 Cal.3d 104, 110.) We review an order denying a motion for judgment notwithstanding the verdict-to the extent the motion is based on sufficiency of the evidence-for substantial evidence, viewing the evidence in the light most favorable to the party securing the verdict. (*Id*. at p. 111.)

When the appeal from the denial of a motion for judgment notwithstanding the verdict raises questions of law, we review the trial court's ruling de novo. (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1138.) The correctness of a special verdict is analyzed as a matter of law. (*Trujillo v. North County Transit Dist*. (1998) 63 Cal.App.4th 280, 285.) " 'A verdict should be interpreted so as to uphold it and to give it the effect intended by the jury, as well as one consistent with the law and the evidence.' " (*All-West Design, Inc. v. Boozer* (1986) 183 Cal.App.3d 1212, 1223.) "Where special verdicts appear inconsistent, if any conclusions could be drawn which would explain the apparent conflict, the jury will be deemed to have drawn them." (*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 424.)

### B. PUNITIVE DAMAGES

Punitive damages are governed by Civil Code section 3294, which provides: "In an action for the breach of an obligation not arising from contract, where it is proven by

12

clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." (Civ. Code, § 3294, subd. (a).) Punitive damages are not independently actionable; they are incident to a cause of action for actual damages. (*Mother Cobb's Chicken Turnovers v. Fox* (1937) 10 Cal.2d 203, 206; *McLaughlin v. National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1164.) A discrimination claim under FEHA is an actionable statutory tort (*Trujillo v. North County Transit Dist.*, *supra*, 63 Cal.App.4th at p. 286) that can support a punitive damages award. (*Commodore Home Systems, Inc. v. Superior Court* (1982) 32 Cal.3d 211.)

As a general rule " '[a]ctual damages must be found as a predicate' " for punitive damages. (*Mother Cobb's Chicken Turnovers v. Fox*, *supra*, 10 Cal.2d at p. 205; see also *Kizer v. County of San Mateo* (1991) 53 Cal. 3d 139, 147; *Cheung v. Daley* (1995) 35 Cal.App.4th 1673, 1676; *Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 532; *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 238-239.) That rule is based on the principle that a defendant must have committed a tortious act before punitive damages can be assessed. (*Brewer v. Second Baptist Church* (1948) 32 Cal.2d 791, 801-802; *Wayte v. Rollins International, Inc.* (1985) 169 Cal.App.3d 1, 16; *Carr v. Progressive Casualty Ins., Co.* (1984) 152 Cal.App.3d 881, 892.) In lieu of a compensatory damages award, punitive damages may be supported by an offset, unjust enrichment, or nominal or presumed damages. (*McLaughlin v. National Union Fire Ins. Co*, *supra*, 23 Cal.App.4th at pp. 1163-1165.)

Punitive damages also may be supported by uncontradicted evidence that a plaintiff was damaged by a defendant's tortious act. For example, in *Wayte*, a worker, his spouse and dependent adult son sued the employer for retaliatory termination after the worker resisted the employer's decision to exclude the dependent son from the worker's employer-sponsored health insurance policy. (*Wayte v. Rollins*, *supra*, 169 Cal.App.3d at pp. 8-9.) The jury awarded compensatory damages to the worker and his spouse, and

13

punitive damages to the worker, spouse, and dependent son. (*Id*. at p. 9.) The *Wayte* court upheld the punitive damages award to the dependent son because the verdicts awarding general damages to the worker and his spouse showed that defendant was wrongfully terminated, and uncontradicted evidence showed that the son was damaged because his father's termination destroyed his right to medical benefits under the employer's heath plan. (*Id*., p. 16.) Ultimately, "punitive damages must bear a reasonable relation to the injury, harm, or damage actually suffered by the plaintiff and proved at trial." (*Gagnon v Continental Casualty Co*. (1989) 211 Cal.App.3d 1598, 1605.)

## C.    WAIVER

Aside from clarifying that punitive damages are predicated not on compensatory damages but rather more broadly on a tortious act, plaintiff argues that defendant waived any right to challenge the punitive damages award. According to plaintiff, the parties stipulated at trial that punitive damages could be awarded regardless of whether she established the requisite substantial harm finding to prove her FEHA claim. In plaintiff's view, "the jury asked the court whether there was a conflict in awarding punitive damages if they found the termination was not a substantial factor in causing harm to [plaintiff]," and defendant's failure to object to the court's response amounted to a stipulation that punitive damages were not contingent on a substantial harm finding. The record does not support plaintiff's position.

The jury asked a far less precise question-"Are findings for verdict form 1, question number 6, and verdict from 7, question number 2, mutually exclusive or dependent upon each other?"-a question the jury itself sought to "explain … a little better." Counsel for defendant explained that she was "unclear as to what the confusion of the jury is, because number 2 in punitive damages asks for an amount, correct?" Counsel's comment reflects a concern that the jury was inquiring about the amount of punitive damages, not the legal threshold for punitive damages. That comment, in

addition to counsel's quick post-verdict observation that the punitive damages award could not stand in light of the FEHA verdict because there was no legal basis to support the award, suggests counsel was *not* understanding the jury to have been asking whether punitive damages may be awarded if defendant's decision to discharge plaintiff was not a substantial factor in causing her harm. The failure of plaintiff's counsel to point to a "stipulation" during the post-verdict discussion, when defendant's counsel was voicing her position that the punitive damages award was defective, suggests that plaintiff herself did not understand the jurors to be asking whether they could award punitive damages in the absence of a substantial harm finding.

We do not view the court's response to the jury's question-that the findings are neither mutually exclusive nor dependent-as instructing that punitive damages can be awarded regardless of whether plaintiff proves her cause of action. Nor do we view counsel's failure to object to the court's response as stipulating to an award of punitive damages without a substantial cause finding. There clearly is a dependent relationship between a substantive cause of action and punitive damages; if a plaintiff does not prove her tort, she is not entitled to punitive damages. But there is no showing in the record that defendant's counsel understood the jury to be asking about that relationship, much less that she stipulated to an inaccurate statement of law.

D.     THE FEHA SPECIAL VERDICT

Under settled law, plaintiff is entitled to the punitive damages award if she prevailed on her FEHA claim, and that inquiry requires us to examine the jury's special verdicts. Citing Witkins on Criminal Procedure, the trial court recognized that " '[a] verdict should be interpreted so as to uphold it and to give it the effect intended by the jury, as well as one consistent with the law and the evidence,' " and that "[c]ourts may resolve inconsistencies by determining the jury's intention from an examination of the verdict alone." But instead of examining the verdicts for consistency or substantial evidence, the trial court disregarded the jury's "no substantial harm" finding and made its

own finding that plaintiff had suffered harm and damages, deeming plaintiff to have prevailed on her FEHA claim. Our review shows that the FEHA special verdict is not inherently inconsistent and is supported by substantial evidence.[5] According to the special verdict form, defendant prevailed on the FEHA claim because the jury found, to the extent plaintiff was harmed, that defendant's decision to discharge her was not a substantial factor in causing that harm.

The jury could have found that plaintiff's pregnancy was a reason-but not the sole or even the primary reason-for her discharge. The jury was instructed that the law required defendant to pay plaintiff's medical insurance during and after her pregnancy leave. Although evidence was presented that defendant intended to discontinue plaintiff's health insurance as a cost-saving measure, evidence also was presented that plaintiff failed to charge customers for drinks and at least two packs of cigarettes, and that plaintiff was terminated under new management's zero tolerance policy for her negligent failure to ring those items.[6] Thus, the insurance coverage costs associated with plaintiff's maternity leave could have been merely a motivating reason for her termination.

At the same time, substantial evidence supports the jury's finding that the decision to terminate plaintiff was not a substantial factor in causing her harm. Although question

---

[5] The trial court's decision to instruct on the definition of substantial factor after the jury had reached its verdicts is attributed to its perception that the jury's affirmative answer to question five ("Was [plaintiff's] pregnancy a motivating reason for [defendant's] decision to discharge [plaintiff]?") and negative answer to question six ("Was [defendant's] decision a substantial factor in causing harm to [plaintiff]?") were inherently inconsistent. Specifically, the court thought that both questions were directed at the *reason* for terminating plaintiff-was plaintiff's pregnancy a motivating or a substantial reason for her discharge? But question six is unrelated to the reason for plaintiff's discharge; rather, that question pertains to a different element of the FEHA claim-harm resulting from the discharge decision.

[6] The FEHA special verdict does not support the trial court's ruling that "the jury found that [defendant] manufactured a pretextual reason for [plaintiff's] termination."

16

six, as phrased, assumes that plaintiff was harmed, the jury could have found that any harm was de minimus. Plaintiff testified that she did not know how she was going to have a baby without health insurance. But she did not claim any medical costs as damages. She testified that she was worried about not having a job to return to, and she claimed lost wages based on a full-time work schedule, but she had planned to return to work after her maternity leave as a part-time employee. She also complained of humiliation although she was vindicated by her unemployment insurance award and she received unyielding support from a community that knew and loved her.[7]

Additionally, the jury could have found that plaintiff brought about any harm herself by negligently failing to charge for the drinks and cigarettes. The jury found that defendant's decision to discharge plaintiff was not "a substantial factor in causing harm to [plaintiff]." In the jury's eyes, any harmed caused by defendant's decision did not support an actionable claim against defendant.

## E.    RECONCILING THE SPECIAL VERDICTS

In the absence of the punitive damages special verdict, judgment on the FEHA discrimination claim clearly would rest with defendant. But the jury also found that defendant engaged in conduct with "malice, oppression or fraud" and that conduct warranted a $150,000 punitive damages award. To the extent the special verdicts appear inconsistent, we must determine whether "any conclusions could be drawn [to] explain the apparent conflict" because "the jury will be deemed to have drawn them." (*Wysinger v. Automobile Club of Southern Cal.*, *supra*, 157 Cal.App.4th at p. 424.)

The jury found that defendant's discharge decision was not "a substantial factor in causing harm to plaintiff". At the same time, the jury found that defendant engage[d] in

---

[7] We find no support in the record for the trial court's finding that plaintiff was "stigmatized … because it was widely understood that the termination was a result of her stealing." To the contrary, club members rallied for plaintiff by boycotting a bingo night after learning of plaintiff's discharge.

17

"conduct with malice, oppression, or fraud." The jury was instructed: "Malice means that a defendant acted with intent to cause injury or that a defendant's conduct was despicable and was done with willful and knowing disregard for the rights or safety of another. A defendant acts with knowing disregard when the defendant is aware of the probable dangerous consequences of his, her or its conduct and deliberately fails to avoid those consequences. [¶] Oppression means that a defendant's conduct was despicable and subjected [plaintiff] to cruel and unjust hardship in knowing disregard of her rights. [¶] Despicable conduct is conduct that is so vile, base or contemptible that it would be looked down on and despised by reasonable people. [¶] Fraud means that a defendant intentionally misrepresented or concealed a material fact and did so intending to harm [plaintiff]."

Plaintiff's finding of "malice, oppression, or fraud" is not inconsistent with a special verdict favoring defendant on the substantive FEHA claim. Viewing the special verdicts together, and mindful that (1) the jury twice found that defendant's decision to discharge plaintiff was not a substantial factor in causing harm to plaintiff, and (2) the jury was instructed that punitive damages were designed to punish a wrong-doer (not to make the plaintiff whole), the jury could have found that defendant's conduct was despicable despite the lawful decision to enforce its zero tolerance policy. In this context, we note the punitive damages instruction refers to defendant's conduct generally, not the defendant's decision to terminate plaintiff specifically. The jury could have considered the termination of a well-liked, long-term employee who was 38 weeks pregnant based on a negligent act to have been despicable, and plaintiff's discharge to have been undertaken without regard for her right to continued medical insurance coverage while she otherwise would have been on maternity leave.

Although the trial court correctly observed the jury's clear intent to award plaintiff $150,000, the record does not support the trial court's finding that the jury was told that the manner in which they could award damages was unrestricted. Rather, the special

18

verdict forms informed the jury that it could not award compensatory damages unless it found defendant to have substantially caused harm, and that it could award damages to punish defendant for reprehensible conduct.

The trial court should have awarded judgment to defendant on the FEHA discrimination claim.  (Code Civ. Proc., § 624 ["The special verdict must present the conclusions of fact as established by the evidence … and those conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law."].)  Because that claim failed, as a matter of law so too does the $150,000 punitive damages award.  (*Myers Building Industries, Ltd. v. Interface Technology, Inc*. (1993) 13 Cal.App.4th 949, 955.)

F.       DEFENDANT'S CHALLENGE TO THE "MOTIVATING REASON" QUESTION

Defendant argues that the trial court committed prejudicial error by failing to instruct the jury on the FEHA claim that plaintiff must show that defendant's discharge decision was *substantially* motivated by her pregnancy.  It is unnecessary for us to reach this instructional issue in light of our conclusion that defendant prevailed on the FEHA claim.

### III.  DISPOSITION

The judgment is reversed.  On remand, the trial court shall enter judgment in favor of defendant on plaintiff's FEHA claim and shall strike the jury's punitive damages award.  Each side shall bear its own costs on appeal.

_____

Grover, J.

**WE CONCUR:**

_____

Bamattre-Manoukian, Acting P.J.

_____

Márquez, J.

*Moore v JMK Golf, LLC*
**H039522**