Filed 5/4/21  Everhart v. Trapac CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| JUSTIN EVERHART et al., | B303591 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 18STCV07650) |
| v. | |
| TRAPAC, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dennis J. Landin, Judge.  Affirmed in part, reversed in part, and remanded with directions.

The Arkin Law Firm and Sharon J. Arkin; The Kristy Law Firm and James R. Kristy for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Connie M. Fickel, Ryan D. Harvey and Timothy M. Schowe for Defendant and Respondent.

---

## INTRODUCTION

Appellants Hollis Lewandoski and Justin Everhart are former employees of respondent TraPac, LLC.  Anna Holt ran an insurance/financial services company and was the broker for TraPac's employee health and disability policies.  Holt and her company, Five Star Financial Services of America, promised to invest appellants' money but instead, stole it.  Appellants filed a complaint against TraPac, Holt, and Five Star, alleging that TraPac should be charged for the latter two's torts under both agency and joint venture theories of liability.[1]  Lewandoski also separately alleged a negligence claim against TraPac.  The trial court sustained TraPac's demurrer to appellants' second amended complaint (SAC) without leave to amend, and appellants appealed from the resulting judgment.

On appeal, appellants argue the court erred in sustaining the demurrer because: (a) they sufficiently pled TraPac's liability under an agency theory; (b) they sufficiently pled TraPac's liability under a joint venture theory; and (c) their new theory of negligence, asserted for the first time on appeal, states a cause of action.  Appellants

---

[1]     Neither Holt nor Five Star is a party to this appeal.

further alleged that although not asserted as a separate claim, the facts alleged in the SAC sufficiently stated a cause of action for negligent misrepresentation; alternatively, to the extent the negligence and/or negligent misrepresentation claims were insufficiently pled, appellants assert they can be amended.

We conclude the trial court properly determined that appellants did not sufficiently allege any of the causes of action set forth in the SAC. Specifically, (a) appellants did not sufficiently plead liability under an agency theory because dispensing financial advice to appellants was neither in the scope of Holt's agency, nor a foreseeable risk of such an agency; (b) appellants did not sufficiently plead liability under a joint venture theory because Holt's theft was not in furtherance of the joint venture; and (c) appellants' newly articulated negligence claim fails for lack of allegations establishing duty or proximate causation. We further conclude, however, that while the SAC failed to sufficiently plead a cause of action for negligent misrepresentation, there is a reasonable possibility appellants could amend to successfully do so. We therefore reverse the judgment of dismissal and remand to permit appellants to file an amended complaint, in which they may attempt to allege only a cause of action for negligent misrepresentation.

## STATEMENT OF RELEVANT FACTS

### A.    *TraPac Successfully Demurs to the First Amended Complaint*

In December 2018, appellants filed a complaint against TraPac and Holt, alleging five causes of action: (1) intentional misrepresentation; (2) breach of fiduciary duty; (3) conversion; (4) financial abuse; and (5) unfair business practices.[2]  In April 2019, appellants amended the complaint, alleging the same causes of action.  The gist of the complaints was that appellants, while employed or after being employed by TraPac, had entrusted their money to Holt and Five Star, who had stolen it, and that TraPac was liable, both because Holt was its agent, and because TraPac and Holt were joint venturers.  TraPac demurred, arguing in part that appellants failed to state facts sufficient to allege liability under joint venture or agency theories.

In July 2019, the court sustained the demurrer over appellants' opposition, but granted appellants leave to amend.  The court found that while appellants had sufficiently pled a joint venture between TraPac and Holt "to form a for-profit joint venture of providing insurance policies to TRAPAC's current and former employees," they failed to allege that Holt's actions were "conducted 'in furtherance of the venture.'"  Similarly, the court found that while

---

[2]    On appeal, appellants have abandoned their unfair business practices claim.

appellants had sufficiently pled an agency relationship between TraPac and Holt, they failed to allege facts establishing that Holt's actions "f[e]ll within the scope of the agency relationship." Specifically, appellants failed to "sufficiently show the scope of TRAPAC's agency and how . . . Holt's actions were within that scope." Finally, the court found that appellants insufficiently alleged that "Holt's malfeasance was a risk inherent to the provision of insurance and investment advice."

**B.** ***Appellants File the Second Amended Complaint***

In July 2019, appellants filed their SAC, adding a cause of action for negligence. The relevant allegations are set forth below:

**1.** ***TraPac and Holt***

"At least as early as September 2014," TraPac and Holt entered into an agreement "for the purpose of forming a for-profit joint venture." As part of this joint venture, Holt "would provide skilled counseling to TRAPAC employees, as a free benefit of employment, in the following areas: (1) health and disability insurance . . . , (2) Medicare enrollment, and (3) to those employees whom TRAPAC had terminated, counseling regarding Social Security and unemployment benefits." Holt "would also function as a skilled broker for all employee health and disability insurance policies that TRAPAC required." She additionally "would enter into commercial agreements, as she was able,

5

with both current and terminated TRAPAC employees to provide skilled financial planning and investment advice and to broker investments, through Five Star, for such employees in exchange for financial consideration."

Appellants also included two generic allegations that "[a]t all relevant times, Defendants . . . were the agents and employees of each of the remaining Defendants, and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of each agent" and that "[a]t all relevant times, Ms. Holt acted as a joint venturer of the Venture and in furtherance of the Venture."

### 2.  *Holt Provides Services*

Between September 2014 and April 2017, TraPac "did in fact market Ms. Holt's services as a financial planner and investment broker to TRAPAC's employees, and endorse Ms. Holt as well qualified and trustworthy to act in these capacities.  In fact, TRAPAC presented the entire spectrum of Ms. Holt's services, including those of financial planning and brokering investments, to its employees as benefits of employment."  Specifically, "through its Human Resources Manager, Elena Salvatore, TRAPAC informed its employees, including Plaintiffs, that Ms. Holt was available to counsel them, as a free benefit of employment, in the areas of health and disability insurance, including but not limited to health and disability plans offered by TRAPAC to its employees; Medicare enrollment; counseling to employees whom

TRAPAC terminated, including counseling regarding Social Security and unemployment benefits; and financial planning and investment advice and brokerage services." TraPac's endorsement of Holt "as competent and trustworthy . . . came in the form of emails to employees, including Plaintiffs, from TRAPAC's Human Resources department and in the form of announcements at meetings organized by Human Resources." TraPac's "endorsement was a material inducement for Plaintiffs . . . to entrust their retirement and other savings to Ms. Holt and Five Star for the purpose of investing such funds," and "as a result of TRAPAC's marketing and endorsement of her, Ms. Holt did in fact enter into commercial agreements with current and former TRAPAC employees, including Plaintiffs, to provide the services of a skilled financial planner and investment adviser and broker."

### 3.   *Holt Swindles Appellants*

### (a)   *Lewandoski*

Holt met with TraPac employee Lewandoski in September 2014, to advise her about health insurance and Medicare. "Afterward, Ms. Holt offered financial planning services to Ms. Lewandoski, and gave her a business card bearing Ms. Holt's name and a company name of 'Five Star Financial Services of America.' . . . Ms. Holt offered to provide financial planning advice to Ms. Lewandoski." Lewandoski accepted a few days later, and on instructions from Holt, liquidated a 401(k) account associated with a

previous employer and transferred the proceeds to Holt.  In January 2015, TraPac terminated Lewandoski.  Lewandoski subsequently transferred to Holt amounts of $404,331 (proceeds from her TraPac 401(k) account), $30,000 (from her spouse's savings account), and $119,000 (from another retirement account).  She received total payments of $12,000 from Holt, and estimated she lost more than $646,000.

**(b)** *Everhart*

Holt met with Everhart in July 2015, to advise him about his health insurance after the company laid him off.  During the meeting, "Holt confirmed that she was assisting TRAPAC's laid-off employees with health insurance, but quickly added that she, through Five Star, was also offering financial planning advice and brokering of investment vehicles to replace his 401(k) account."  Everhart accepted the offer, and in August 2015, liquidated his TraPac 401(k) account and transferred the proceeds to Hart.

In August 2016, Everhart read an article stating that Holt's business partner had been arrested.  This "shook [his] faith" in Holt, and he decided to ask her to return the money he had entrusted to her, including all earned interest.  TraPac agreed to assist him in this endeavor, and in September, TraPac presented him with an agreement between three parties:  TraPac, Five Star, and Everhart.  Under the agreement, Five Star would return all of Everhart's principal and interest and, in exchange, Everhart would not sue TraPac or Five Star.  All parties signed, but

8

Everhart never received his money back. TraPac continued trying to contact Holt on Everhart's behalf before giving up in April 2017. Everhart estimated he lost more than $125,000.

In May 2018, Holt and her business partners were indicted for investment fraud. It was alleged that they took their investors' money and used it for their own ends.

Based on these allegations, appellants asserted that Holt was liable for intentional misrepresentation, breach of fiduciary duty, conversion, and (against Lewandoski, who was alleged to be at least 65 during these events) elder financial abuse. Appellants further pled that TraPac was liable because Holt was its joint venturer and, additionally, was acting as TraPac's agent.

The SAC also added a new cause of action by Lewandoski for negligence, alleging that TraPac breached a duty of care to warn her when it "became aware that the investment-brokerage services of Ms. Holt put Ms. Lewandoski at risk of losing her retirement savings." Lewandoski specifically claimed TraPac had a duty to warn her "if and when TRAPAC became aware that the investment-brokerage services of Ms. Holt put Ms. Lewandoski at risk of losing her retirement savings."

### C. *The Court Enters Judgment Against Appellants*

TraPac demurred to the SAC, arguing that Lewandoski's negligence cause of action failed, both because

appellants had not sought leave to add it, and because it failed to state a claim. TraPac also argued that the remaining causes of action failed for the same reasons previous articulated by the court. In opposing the demurrer, though appellants perfunctorily asked for leave to amend should the demurrer be sustained, they failed to explain how they could amend the SAC to address any defects.

In October 2019, the court sustained the demurrer, this time without leave to amend, finding the SAC "again devoid of facts to show that Holt's fraud was perpetrated in furtherance of the joint venture of providing insurance policies to TRAPAC's current and former employees," and that the "same is true with regard to whether Holt's criminal acts occurred within the scope of TRAPAC's alleged agency. Merely adding conclusory allegations that reiterate the law does not suffice." The court also disagreed with appellants' contention that "an investment broker's fraud against clients is a risk inherent to the alleged venture or agency." The court found the addition of Lewandoski's negligence claim improper because appellants did not seek leave to add it. The court additionally held that the claim failed because the SAC stated that Lewandoski's transfers "took place more than a year before TRAPAC allegedly became aware of Everhart's accusation against Five Star and Holt . . . Plaintiffs cannot establish that TRAPAC's failure to warn Lewandoski caused the alleged harm."

In November 2019, the court entered a separate judgment of dismissal as to TraPac.[3]  Appellants timely appealed.

## DISCUSSION

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules.  'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.'  [Citations.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, . . . we reverse; if not, . . . we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

### A.     *Appellants Failed to Allege Agency Liability*

In sustaining the demurrer to the first amended complaint, the trial court found that appellants had sufficiently pled an agency relationship between TraPac and

---

[3]     Holt and Five Star remained defendants in the case.

11

Holt, but had failed to "sufficiently show the scope" of that agency, or how "Holt's actions were within that scope." The court additionally found appellants had insufficiently alleged that Holt's malfeasance "was a risk inherent to the provision of insurance and investment advice." Because the court found that appellants had failed to correct these errors in their SAC, it sustained the demurrer to the SAC.

Both parties agree that a principal is liable for an agent's tort "if the agent commits the tort 'in the scope of his employment and in performing service on behalf of the principal'" or "if the principal ratifies its agent's conduct 'after the fact by . . . voluntar[ily] elect[ing] to adopt the [agent's] conduct . . . as its own.'" (*Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 969.) Appellants argue they adequately alleged both that Holt committed her theft in the scope of her agency with TraPac, and that TraPac ratified Holt's actions. We address each contention below.

### 1. *Holt's Torts Were Not Within the Scope of Her Agency*

Appellants argue the SAC alleged facts sufficient to support finding that: (a) Holt was TraPac's actual or ostensible agent in providing financial advice to appellants; and (b) Holt's actions were within the scope of providing such advice. We disagree.

12

### (a) *Holt Was Not TraPac's Agent in Providing Financial Advice to Appellants*

### (i) *Actual Agency*

Noting our Supreme Court's statement in *Skopp v. Weaver* (1976) 16 Cal.3d 432, 439 that "an allegation of agency . . . is a statement of ultimate fact" and that therefore "further allegations explaining how this fact of agency originated become unnecessary," appellants argue they have adequately pled that Holt provided financial advice to appellants as TraPac's agent because the SAC included a general allegation that all defendants "were the agents and employees of each of the remaining Defendants." However, cases decided after *Skopp* have held that a generic allegation of agency may be disregarded if specific allegations contradict it. (See, e.g., *La Jolla Village Homeowners' Assn. v. Superior Court* (1989) 212 Cal.App.3d 1131, 1148-1149, disapproved on another ground in *Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 481, fn. 1 [court may disregard general agency allegation when more specific allegation undermines it].)[4]

Here, appellants' general allegation of agency was accompanied by specific allegations as to how and why

---

[4]   Moreover, fourteen years after *Skopp*, our Supreme Court referred to such general allegations of agency as "egregious examples of generic boilerplate." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 134, fn. 12.)

13

TraPac introduced Holt to its employees; read together, these allegations contradict the assertion that Holt acted as TraPac's agent in providing financial advice to appellants.

In setting forth Holt's apparent duties, the SAC alleged she was to do three things: (1) counsel TraPac employees regarding insurance, social security, and unemployment; (2) broker all the health and disability insurance policies TraPac needed; and (3) "enter into commercial agreements, as she was able, with both current and terminated TRAPAC employees to provide skilled financial planning and investment advice and to broker investments, *through Five Star, for such employees in exchange for financial consideration*." (Italics added.) Appellants pled that Holt initially met with Lewandoski to counsel her regarding health insurance and Medicare; it was only "[a]fterward" that Holt provided Lewandoski with "a business card bearing Ms. Holt's name and a company name of 'Five Star Financial Services of America'" and "offered to provide financial planning advice." Similarly, with Everhart, Holt first "confirmed that she was assisting TRAPAC's laid-off employees with health insurance, but quickly added that she, through Five Star, was also offering financial planning advice and brokering of investment vehicles to replace his 401(k) account." In other words, Holt's offer and provision of financial services were outside the services she provided for TraPac, and were instead provided through her own company, Five Star.

Though appellants also alleged elsewhere in the SAC that "TRAPAC presented the entire spectrum of Ms. Holt's services, including those of financial planning and brokering investments, to its employees as benefits of employment" and that "[a]t least as early as September 2014, and through its Human Resources Manager, Elena Salvatore, TRAPAC informed its employees, including Plaintiffs, that Ms. Holt was available to counsel them, as a free benefit of employment, in the areas of health and disability insurance . . . and financial planning and investment advice and brokerage services," the more specific allegations of the SAC make clear that Holt's provision of financial planning advice was to be "through Five Star . . . in exchange for financial consideration." Read as a whole, the SAC alleged that TraPac engaged Holt to advise its employees regarding insurance, social security, and unemployment benefits, and that TraPac also informed its employees that Holt provided financial counseling services, for which they could separately contract with her and her company. If Holt separately engaged with employees to provide financial counseling, such counseling was not within the scope of her agency with TraPac. These specific allegations control over appellants' boilerplate allegation of agency.

### (ii) *Ostensible Agency*

Appellants also argue that they sufficiently alleged Holt was TraPac's ostensible agent. "Before recovery can be had against the principal for the acts of an ostensible agent,

15

three requirements must be met: The person dealing with an agent must do so with a reasonable belief in the agent's authority, such belief must be generated by some act or neglect by the principal sought to be charged and the person relying on the agent's apparent authority must not be negligent in holding that belief." (*J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 403-404.) Here, appellants point to the allegations that TraPac informed them that Holt's financial planning advice was free of charge, and that it touted her as qualified and trustworthy, as allegations sufficient to establish ostensible agency.

As discussed above, taken together, the allegations of the SAC assert that Holt's services as an advisor regarding insurance, social security, and unemployment benefits were a free employment benefit, but that "Holt would enter into commercial agreements, as she was able, with both current and terminated TRAPAC employees to provide skilled financial planning and investment advice and to broker investments, through Five Star, for such employees in exchange for financial consideration." Moreover, when Holt offered financial counseling to Lewandoski, she did so after their meeting regarding health insurance, and by handing Lewandoski a business card of Five Star, not TraPac. Similarly, when meeting with Everhart, she confirmed that she would be assisting him with health insurance, "but quickly added that she, through Five Star, was also offering financial planning advice." And both appellants admit they

16

entered into separate agreements with Holt for financial services.

Further, while Lewandoski began "investing" with Holt while still employed, only a small portion of her claim originated from actions taken during her employment; none of Everhart's claim did.[5] Nothing in the SAC alleged that TraPac intended, or ever gave the impression that it intended, to provide Holt's services as a financial advisor to *former* employees -- to the contrary, appellants alleged her services were offered as "a free benefit of employment." On this record, we conclude appellants inadequately alleged that Holt was TraPac's ostensible agent in providing them with financial advice.

**(b)** ***Holt's Torts Were Not Foreseeable***

Moreover, even had appellants sufficiently pled that Holt was TraPac's agent in providing them with financial advice, TraPac could be liable only if Holt's tortious conduct was """a generally foreseeable consequence of the

---

[5] The SAC alleges that while employed by TraPac, Lewandoski provided Holt with the proceeds of a single 401(k) account. While the SAC does not specify the amount, based on Lewandoski's allegations that she lost in excess of $646,000, that after the initial transfer she gave Holt amounts of $404,331 (TraPac 401(k) proceeds), $30,000 (spouse's savings account), and $119,000 (other retirement account proceeds), and that she received total payments of $12,000, we deduce that Lewandoski transferred approximately $105,000 to Holt while employed by TraPac ($646,000 − $404,331 − $30,000 − $119,000 + $12,000).

17

[employer's] activity." In this usage, . . . foreseeability "merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business."'" (*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 391.) Like the trial court, we disagree with appellants' contention that an investment adviser's outright theft of her clients' money is generally foreseeable, and appellants cite no authority to the contrary.

Appellants also argue that TraPac is liable because it "placed Holt in a position that enabled her, while apparently acting within the authority granted by TraPac to provide financial advice and assistance to its employees, to commit fraud on plaintiffs." But our Supreme Court has expressly stated that "[t]he nexus required for respondeat superior liability--that the tort be engendered by or arise from the work--is to be distinguished from 'but for' causation. That the employment brought tortfeasor and victim together in time and place is not enough." *(Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 295.) Therefore, that TraPac introduced Holt to appellants (thus providing her with the opportunity to swindle them) is insufficient for liability under an agency theory where Holt's tort was not a generally foreseeable consequence.

18

## 2.    *TraPac Did Not Ratify Holt's Torts*

As appellants recognize, "'Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him.'" (*Dickinson v. Cosby* (2019) 37 Cal.App.5th 1138, 1158.) "'A purported agent's act may be adopted expressly or . . . by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is "inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it."'" (*Ibid.*)

Appellants allege that Everhart decided in August 2016 to request the return of all the principal he had invested with Holt, as well as the interest that he purportedly earned, and that TraPac agreed to help him with this endeavor. The next month, TraPac informed Everhart that Holt had agreed to his request and TraPac drafted an agreement providing that Holt would return Everhart's money and Everhart would release any claims against Holt or TraPac. Appellants argue that by entering into this agreement, and by not disaffirming responsibility for Holt's actions, TraPac ratified Holt's theft.

Because neither entering into the agreement nor failing to disaffirm responsibility was an express adoption of Holt's actions, we construe appellants' contention as one alleging that TraPac's acts were an implied ratification, viz.,

19

an indication that TraPac adopted Holt's acts as its own. Even so construed, the argument fails.

We discern no logical connection between TraPac's drafting and entering into the agreement and taking responsibility for Holt's theft. At most, TraPac agreed to act as an intermediary between Everhart and Holt in exchange for Everhart's agreement not to sue TraPac. Though doing so could have inured to the company's benefit, there is simply no basis to construe this act by TraPac as adopting Holt's actions as its own.

As for any responsibility to "disaffirm" Holt's actions, such a requirement could arguably have come into play only if appellants had alleged that Holt was TraPac's agent for the purposes of providing financial advice to a former employee. As discussed above, appellants did not do so.

Thus, even had the SAC unambiguously alleged that Holt was TraPac's agent in providing appellants with financial advice during and after their employment with the company, TraPac still would not be liable for Holt's thievery both because the torts were not a foreseeable consequence of giving financial advice, and because TraPac did not ratify Holt's actions.[6]

---

[6] In their reply brief, appellants claim that "plaintiffs' allegations of ratification go to TRAPAC's ratification *of the existence of the agency*, not specifically to ratification of the theft that arose out of the agency." We fail to see how TraPac's actions give rise to a fair inference that it had adopted the position that Holt was acting as its agent when she acted as appellants'
*(Fn. is continued on the next page.)*

## B. *Appellants Failed to Allege Joint Venture Liability*

The SAC alleged that "[a]t least as early as September 2014," TraPac and Holt entered into an agreement "for the purpose of forming a for-profit joint venture." While it is never explicitly stated what the purpose of this joint venture was, the trial court had previously found that appellants had sufficiently pled that TraPac and Holt agreed "to form a for-profit joint venture of providing insurance policies to TRAPAC's current and former employees." In sustaining the demurrer to the SAC, the court again characterized the joint venture as one "providing insurance policies to TRAPAC's current and former employees." However, the court found that appellants failed to allege that Holt's torts were committed in furtherance of that joint venture. (See *Cochrum v. Costa Victoria Healthcare, LLC* (2018) 25 Cal.App.5th 1034, 1053 ["Where a joint venture is established, the parties to the venture are vicariously liable for the torts of the other in furtherance of the venture"]; CACI No. 3712 ["Each of the members of a joint venture, and the joint venture itself, are responsible for the wrongful conduct of a member acting in furtherance of the venture"].) Appellants do not dispute that for TraPac to be vicariously

_____

financial advisor. Moreover, even if TraPac had ratified Holt's agency through its actions with Everhart, the allegations would still be insufficient to hold TraPac liable because, as previously discussed, Holt's theft was not within the scope of any such agency.

21

liable, Holt's acts must have been in furtherance of the joint venture; nor do they suggest that Holt's theft of appellants' money furthered the alleged joint venture of providing insurance policies to TraPac's employees.

Instead, citing *Unruh-Haxton v. Regents of the University of California* (2008) 162 Cal.App.4th 343 (*Unruh-Haxton*), appellants argue that it was impermissible for the court to decide this issue at the demurrer stage. *Unruh-Haxton* is distinguishable. There, plaintiffs accused two doctors of stealing human genetic material (their eggs) from them. (*Id.* at 349.) Some of the eggs were sold for research, others were fertilized and implanted in different women (presumably for a profit). (*Id.* at 350.) Plaintiffs also alleged that the doctors had formed a joint venture with the other defendants to share the profits of the fertility clinic where their eggs were harvested. (*Id.* at 350.) On appeal, the non-doctor defendants argued the trial court had correctly found plaintiffs' allegations insufficient to support a finding that the defendants were in a joint venture, because plaintiffs had failed to allege these defendants had control over the enterprise. (*Id.* at 370.) After first stating the general principle that "'[W]here evidence is in dispute the existence or nonexistence of a joint venture is a question of fact to be determined by the jury,'" the Court of Appeal found control was sufficiently alleged by allegations that the parties had entered into a written joint venture agreement, and that the joint venture had operated the clinic. (*Id.* at 370-371.) The court then added, "Whether the wrongful acts

22

of one joint venturer were committed in connection with the joint venture, or can be imputed to the other joint venturers are questions for another day because the scope of review on demurrer is limited." (*Id.* at 371.) This generic language cannot reasonably be construed as a commandment that the sufficiency of allegations of liability based on a theory of joint venture can *never* be decided on demurrer -- indeed, such an edict would run afoul of the well-established principle that to survive demurrer, a complaint must state facts sufficient to entitle the plaintiff to relief. (See, e.g., *Selby Realty Co. v. City of San Buenaventura* (1973) 10 Cal.3d 110,123 [recognizing "the well accepted principle that against a general demurrer the only requirement is that upon a consideration of all the facts stated *it must appear plaintiff is entitled to some relief*" (italics added)].)

Here, the trial court expressly found that appellants had failed to allege facts showing Holt's malfeasance was "perpetrated in furtherance of the joint venture." We agree. Holt's actions in stealing appellants' money could not possibly have been in furtherance of a joint venture to provide TraPac's employees with insurance policies. Appellants have pointed to no allegations suggesting how Holt's thievery would advance any joint venture undertaken by TraPac and Holt. We discern no error in sustaining a demurrer where the complaint lacks an allegation essential to recovery.

23

## C. *Appellants Failed to Allege a Negligence Cause of Action*

Though neither the initial nor first amended complaint contained a negligence claim, appellants attempted to add such a cause of action to their SAC on behalf of Lewandoski. Because appellants did not request leave to do so, the trial court found the addition improper, but went on to hold that the cause of action failed regardless, because it failed to allege causation.

Appellants argue on appeal that "the negligence cause of action is viable in this case, both procedurally and legally." Because we conclude that appellants failed to state a cause of action for negligence, we do not address whether they were procedurally permitted to add such a cause of action without the trial court's express permission.

Preliminarily, we note that appellants have changed their theory of negligence on appeal. In their SAC, appellants alleged that TraPac had a "duty of care . . . to warn Ms. Lewandoski if and when TRAPAC became aware that the investment-brokerage services of Ms. Holt put Ms. Lewandoski at risk of losing her retirement savings." But appellants also admitted that Lewandoski's investments with Holt were made between September 2014 and July 2015. It was not until August 2016 that TraPac received Everhart's request for aid in recovering his money from Holt, and not until May 2018 that Holt was indicted. As the trial court correctly noted, because "the SAC states that [Lewandoski's] transfers took place more than a year before

24

TRAPAC allegedly became aware of Everhart's accusation against Five Star and Holt . . . Plaintiffs cannot establish that TRAPAC's failure to warn Lewandoski caused the alleged harm."

Appellants no longer argue the negligence claim pled below was sufficient. Rather, they advance a new and different theory never articulated in any prior complaint. They now allege that because TraPac "retained Holt's services to provide a broad array of insurance and financial services to its employees . . . TraPac owed its employees a duty to assure that if an employee accessed Holt's services, she would act responsibly in managing their finances and not steal their money." Appellants then allege in conclusory fashion that TraPac's supposed breach of this duty "thereby caused injury to plaintiffs."[7] As discussed below, this new theory of negligence fares no better than the abandoned one, because it fails to allege facts sufficient to support a finding of duty or proximate causation.

### 1. *Duty*

Appellants' allegations fail to establish TraPac owed them a duty to "assure that if an employee accessed Holt's services, she would act responsibly in managing their finances and not steal their money." Appellants claim such a duty existed because: (a) TraPac "created [the] peril" when

---

[7] Not only is this an entirely new theory, but unlike the negligence cause of action asserted in the SAC, it apparently would be asserted on behalf of both Lewandoski and Everhart.

it retained Holt to provide its employees with financial advice; and (b) TraPac had a "special relationship" with its employees.  We disagree.

As discussed above, Holt's agency did not include the provision of financial advice -- thus TraPac did not "create[] the peril."  Moreover, appellants present no authority establishing the existence of a special relationship between TraPac and appellants that would impose on TraPac a duty to ensure the insurance broker it hired would act responsibly in managing their money.  Their citation to *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607 (*Regents*) is inapposite.

In *Regents*, our Supreme Court held that "[c]onsidering the unique features of the collegiate environment, . . . universities have a special relationship with their students and a duty to protect them from foreseeable violence during curricular activities." (*Regents*, *supra*, 4 Cal.5th at 613.)  In generally discussing the formation of a special relationship, the court listed several examples, including "an employer with its employees," citing section 40, subdivision (b), of the Restatement Third of Torts.  (*Regents*, *supra*, 4 Cal.5th at 620.)  But the issue of when an employer and its employees had a special relationship was not considered in *Regents*. "Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered."  (*Ginns v. Savage* (1960) 61 Cal.2d 520, 524, fn. 2.)  Additionally, section 40 of the Restatement Third of

26

Torts provides that "[a]n actor in a special relationship with another owes the other a duty of reasonable care with regard to risks that arise within the scope of the relationship" and that "[s]pecial relationships giving rise to the duty provided in Subsection (a) include: . . . (4) an employer with its employees who, while at work, are: [¶] (a) in imminent danger; or [¶] (b) injured or ill and thereby rendered helpless." (Rest. 3d Torts, Liability for Physical and Emotional Harm (2021) § 40, subds. (a) & (b).) There is no allegation that appellants were in imminent danger, or helpless.

In any case, as *Regents* recognized, "[t]he determination whether a particular relationship supports a duty of care rests on policy and is a question of law." (*Regents*, *supra*, 4 Cal.5th at 620.) We conceive of no sound public policy requiring imposition on an employer of a duty to guarantee that an agent's actions committed outside the scope of the agency would not result in harm to its employees.

### 2.    *Proximate Causation*

Moreover, appellants' conclusion that TraPac's alleged breach of duty "thereby caused injury to plaintiffs" is insufficient. There are limits to the generality with which a plaintiff may state a cause of action for negligence. "'[T]he plaintiff must indicate the acts or omissions which are said to have been negligently performed. He may not recover upon the bare statement that the defendant's negligence has

27

caused him injury.'" (*Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 527, quoting *Guilliams v. Hollywood Hospital* (1941) 18 Cal.2d 97, 101.) "'A plaintiff "must allege a causal connection between the negligence . . . and the injury he suffered. Ordinarily that is accomplished by implication from the juxtaposition of the allegations of wrongful conduct and harm. [Citation.] However, where the pleaded facts of negligence and injury do not naturally give rise to an inference of causation the plaintiff must plead specific facts affording an inference the one caused the others."'" (*Berkley v. Dowds, supra*, 152 Cal.App.4th at 528, quoting *Christensen v. Superior Court* (1991) 54 Cal.3d 868, 900-901.)

Here, even assuming TraPac had a duty to "assure that if an employee accessed Holt's services, she would act responsibly," appellants did not explain in their opening brief what TraPac did or failed to do that breached this supposed duty. In their reply brief, they contended that "TRAPAC failed to adequately and reasonably investigate Holt, her partners or her company in order to ascertain her qualifications, honesty and trustworthiness, and TRAPAC therefore had no reasonable basis for asserting that Holt was competent, qualified or trustworthy." But appellants still fail to allege any facts demonstrating how TraPac's omission could have proximately caused appellants' injuries -- there is no allegation, for example, that Holt had a discoverable criminal record, or indeed any discoverable history that would have indicated she would abuse a position of trust by

28

stealing appellants' money outright.  In short, appellants did not allege a cognizable claim of negligence below or on appeal, and have not shown how they could do so.

**D.** ***Appellants Failed to Adequately Allege Negligent Misrepresentation, But There Is a Reasonable Possibility They Could Do So***

Appellants' SAC did not purport to include a cause of action for negligent misrepresentation.  Nonetheless, on appeal, they assert the allegations were sufficient to state such a claim; alternatively, they suggest that any deficiency can be cured.

"The elements of a negligent misrepresentation are '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.'" (*Tindell v. Murphy* (2018) 22 Cal.App.5th 1239, 1252.)  Appellants argue that their SAC "also alleged facts sufficient to state a cause of action for negligent misrepresentation."[8]

_____

[8]     While no negligent misrepresentation cause of action was alleged below, nor is there any evidence such a cause of action was suggested to the trial court as viable, on an appeal from a demurrer, we "make a de novo determination of whether the complaint alleges 'facts sufficient to state a cause of action under *any possible legal theory*,'" including "a legal theory presented for the first time in an opening appellant's brief." (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, *(Fn. is continued on the next page.)*

29

Specifically, they allege that TraPac represented to appellants that "Holt was a skilled, trustworthy financial advisor" but "she was certainly not trustworthy" and that even if TraPac believed she was, "it had no reasonable grounds for believing that." On appeal, appellants additionally allege that TraPac made this representation intending that appellants rely on it, and that appellants' reliance was both reasonable and a substantial factor in their subsequent injury.

TraPac counters that any representation of Holt's trustworthiness was an opinion that does "not misrepresent any past or existing material fact," and therefore cannot be the basis of a negligent misrepresentation claim. Specifically, TraPac contends that because it "owns a shipping container terminal and operates a stevedore service," "is *not* a stock brokerage or financial services firm, and there is no allegation it held itself out as having any special expertise or unique knowledge in these areas," and it "did not hold itself out as an expert in vetting investment advisers," "[w]hen it represented Holt was qualified and trustworthy there were no grounds for anyone to treat this as a positive affirmation of fact."

1244; *20th Century Ins. Co. v. Quackenbush* (1998) 64 Cal.App.4th 135, 139, fn. 3 ["When a demurrer is sustained without leave to amend the petitioner may advance on appeal a new legal theory why the allegations of the petition state a cause of action"].)

We think TraPac too narrowly limits the potential bases for its liability. One need not be an expert in determining trustworthiness to be liable for proclaiming that another possesses this quality, if the proclamation is stated as a fact, or in a manner leading the listener to believe it is based on facts. (See *Cohen v. S & S Constr. Co.* (1983) 151 Cal.App.3d 941, 946 [negligent misrepresentation cause of action may lie "where a party states his opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion"]; *Strutzel v. Williams* (1952) 109 Cal.App.2d 512, 514 [representation that "Mr. Brunson was honest and honorable" could constitute false and fraudulent misrepresentation].) Even a non-expert in human morality can describe a person as honest in a way that implies knowledge of facts justifying a belief in such an opinion.

Here, the SAC alleged that "TRAPAC's endorsement of Ms. Holt and Five Star as competent and trustworthy financial planners and investment brokers came in the form of emails to employees, including Plaintiffs, from TRAPAC's Human Resources department and in the form of announcements at meetings organized by Human Resources." Conceivably, the contents of any such e-mails or announcements could lead to a reasonable conclusion that TraPac stated facts to justify its belief in Holt's trustworthiness. If TraPac promoted Holt's trustworthiness as a financial planner, having no reasonable basis for such representation, it could be liable for negligent misrepresentation.

However, because "[c]auses of action for intentional and negligent misrepresentation sound in fraud . . . each element must be pleaded with specificity.  [Citation]  'The specificity requirement means a plaintiff must allege facts showing how, when, where, to whom, and by what means the representations were made, and, in the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, what they said or wrote, and when the representation was made.'" (*Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1166-1167.)  The allegations appellants stated in their opening brief fail to meet this level of specificity, and thus fail to state a cause of action for negligent misrepresentation.  But "[i]f there is any reasonable possibility that the plaintiff can state a good cause of action, it is error to sustain a demurrer without leave to amend."  (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 245.)  Based on the allegations that TraPac's emails and announcements to its employees "endorse[d] . . . Ms. Holt and Five Star as competent and trustworthy financial planners," and appellants' representations that they relied on such endorsement to entrust their funds to her, we conclude there is a reasonable possibility appellants could -- with additional allegations satisfying the specificity requirements -- amend their complaint to state a cause of action for negligent misrepresentation.  In doing so, we express no opinion as to

32

any particular infirmity TraPac may choose to raise regarding any such amendment -- that is a matter for the trial court to consider in the first instance.[9]

---

[9] We further emphasize that we find no fault in the trial court's failure to consider the viability of a cause of action articulated for the first time on appeal.

# DISPOSITION

The judgment is reversed.  Because the trial court correctly sustained TraPac's demurrer to appellants' other causes of action, on remand, appellants are granted leave to file an amended complaint to allege only a cause of action for negligent misrepresentation.  TraPac may challenge any such amended complaint in any manner permitted by law. In the interests of justice, the parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

COLLINS, J.

34